838 F.2d 468
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Frederick Wayne THOMAS, Appellant,
v.
Nathan A. RICE, Warden, and the Attorney General of the
State of North Carolina, Appellees.
 No. 85-7552.
 United States Court of Appeals, Fourth Circuit.
 May 14, 1987.
 
 John H. Boddie on brief for appellant.
 Barry S. McNeill, Assistant Attorney General (Lacy H. Thornburg, Attorney General, on brief), for appellees.
 Before JAMES DICKSON PHILLIPS and CHAPMAN, Circuit Judges, and MAXWELL, United States Chief Judge for the Northern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Petitioner Frederick Wayne Thomas, a North Carolina state prisoner, is serving a mandatory term of life imprisonment upon his conviction in a North Carolina state court of first degree sexual offense against the person of a ten-year old male.
 
 
 2
 Thomas was arrested in Winston-Salem, North Carolina on August 5, 1982, on charges of attempting to commit second degree sexual offense against a fourteen-year old male, and kidnapping. While Thomas was under arrest on these charges, police officers of the Winston-Salem Police Department also questioned Thomas concerning a similar sexual assault upon a ten-year old male. Regarding the latter incident, Thomas gave the officers an inculpatory statement which the prosecution then introduced at the Thomas' trial in state court.
 
 
 3
 The pertinent events which occurred at the time Thomas' statement was given are uncontested. In the afternoon of August 6, 1982, Detective Randall Weavil and Officer J.I. Dalton of the Winston-Salem Police Department went to the Forsyth County Jail and escorted Thomas, who had been arrested in connection with an incident involving the fourteen-year old male and taken into custody on the previous day, to City Hall for questioning regarding the incident involving the ten-year old male. After advising Thomas of his constitutional rights, the officers began to question him regarding this latter incident. Soon after the interrogation began Thomas indicated to the officers, "I think I need a lawyer." At that point the questioning ceased and the officers transported Thomas to the office of the Clerk of the Superior Court. While Thomas waited nearby the officers proceeded to obtain a warrant from the clerk. As Officer Dalton filled out the appropriate papers he remarked to Thomas, "Be sure to tell your attorney that you had the opportunity to help yourself and didn't." Approximately five minutes later Thomas inquired as to whether Officer Dalton still wanted a statement. Officer Dalton replied that it was "up to him" but that the officers would take his statement if he wanted to make one. Thomas then indicated that hbe would like to make a statement. At this point the officers escorted Thomas back to City Hall, advised him of his rights, and, after Thomas had waived his right to counsel, the officers proceeded to take his statement.
 
 
 4
 Thomas filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254 in the United States District Court for the Middle District of north Carolina alleging, inter alia, that his conviction was faulty because the state trial court had erred in denying his motion to suppress and in failing to determine that a written inculpatory statement was obtained from Thomas in violation of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The district court referred the matter to United States Magistrate Paul Trevor Sharp who concluded that Thomas had received a full and fair evidentiary hearing on his suppression motion before the state court and that the findings made by the trial judge were supported by evidence in the record. Finding no reason to disturb the findings of fact entered by the trial judge Magistrate Sharp accordingly accepted them. Sumner v. Mata, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982); 28 U.S.C. Sec. 2254(d).
 
 
 5
 Following his deferral to these findings of fact, Magistrate Sharp then set out to make an independent determination of the voluntariness of the inculpatory statement given by Thomas. Based upon his independent review of the evidence Magistrate Sharp, finding no reason to question the trial judge's finding that the policeman's remark did not induce Thomas' statement but that Thomas initiated the conversation and made the statement for his own purposes, concluded that Thomas had initiated the conversation with the police and had knowingly and intelligently waived his right to remain silent and to consult with an attorney.
 
 
 6
 Next, regarding Thomas' contention that his statement was not freely and voluntarily given, the magistrate noted that the trial judge had the opportunity to hear testimony and to evalute the credibility of the witnesses, found no reason to dispute the state court's finding as to the motivation for the statement, and independently concluded that the statement was made freely and voluntarily. Finding that none of Thomas' constitutional rights were violated with respect to the statement which was offered into evidence at trial, the magistrate, in accordance with 28 U.S.C. Sec. 636(b), filed his proposed findings of fact and recommendation for disposition. Within the time limitation set forth in the statute Thomas filed objections to the magistrate's findings and recommendations. The district court after reviewing the portions of the magistrate's report to which objections were made and making a de novo determination in accord with the magistrate's report, adopted the magistrate's findings and recommendations and dismissed the civil action.
 
 
 7
 Under 28 U.S.C. Sec. 2254(d) federal courts must accord a presumption of correctness to state court findings of fact. The statute provides, in pertinent part, that "a determination after a hearing on the merits of a factual issue, made by a state court of competent jurisdiction ..., shall be presumed to be correct." In 1985 the United States Supreme Court held, following an uninterrupted line of cases coming to that Court both on direct appeal and on review of applications to lower federal courts for writs of habeas corpus, the ultimate question of whether, under the totality of the circumstances, a challenged confession was obtained in a manner compatible with the requirements of the Constitution to be a matter not entitled to a presumption of correctness under 28 U.S.C. 2254(d) but rather a matter for independent federal determination. Miller v. Fenton, --U.S. ----, 106 S.Ct. 445, 88 L.Ed. 405 (1985). In so holding the Court recognized that "subsidiary factual questions, such as whether a drug has the properties of the truth serum ... or whether in fact the police engaged in the intimidation tactics alleged by the defendant ... are entitled to the Sec. 2254(d) presumption." Miller v. Fenton, --U.S. ----, 106 S.Ct. at 451 (citations omitted).
 
 
 8
 In his review of the circumstances of this case, Magistrate Sharp independently concluded that Thomas' statement was not the result of any infringement upon his rights to remain silent, to consult with counsel, or to have counsel present during interrogation. Relying upon findings of fact made by the trial court, the magistrate concluded that subsequent to his election to remain silent Thomas initiated conversation with the police, indicated that he wanted to make a statement, and then knowingly and intelligently waived his right to remain silent and to consult with an attorney. Thus the magistrate independently concluded that the statement given to the Winston-Salem police officers was freely and voluntarily given and was not taken in violation of his constitutional rights to remain silent or to counsel.
 
 
 9
 Inasmuch as we find that the district court gave proper deference to the state trial court's findings on subsidiary issues of fact but made a determination of its own with regard to the ultimate question of voluntariness of Thomas' inculpatory statemewnt, the judgment of the district court adopting the magistrate's findings and recommendations and dismissing petitioner's claim as one being without merit is hereby
 
 
 10
 AFFIRMED.
 
 
 11
 JAMES DICKSON PHILLIPS, Circuit Judge, dissenting:
 
 
 12
 I respectfully dissent.
 
 
 13
 I would hold that the police conduct here challenged constituted a resumption of custodial interrogation that violated petitioner's previously invoked right to counsel and entitled him to habeas corpus relief.
 
 
 14
 * Edwards v. Arizona, 451 U.S. 477 (1981), extending the prohylactic rule of Miranda v. Arizona, 384 U.S. 436 (1966), established a per se rule governing the fifth amendment rights of persons such as petitioner who, responding to Miranda warnings, have invoked the right to have the assistance of counsel during any ensuing custodial interrogation. They may not thereafter be subjected to any custodial interrogation without counsel unless they (1) initiate further conversation with the police and (2) then knowingly and intelligently waive the right to counsel previously invoked. Edwards, 451 U.S. at 484-85. See Smith v. Illinois, 469 U.S. 91, 95 (1984) (" 'rigid' prophylactic rule"); Solem v. Stumes, 465 U.S. 638, 646 (1984) ("bright-line rule to safeguard preexisting rights" to assistance of counsel); Oregon v. Bradshaw, 462 U.S. 1039, 1044 (1982) ("prophylactic rule, designed to protect an accused in police custody from being badgered by police officers").
 
 
 15
 This right is therefore violated if, before the accused himself does anything to initiate further "communications, exchanges, or conversations with the police," Edwards, 451 U.S. at 485, the police "at their instance" embark on "reinterrogation." Id. Even if the accused does initiate further conversation, there still remains the question, an independent one, whether he has in the process or thereafter knowing and intelligently waived the right to counsel, see Bradshaw, 462 U.S. at 1045) (initiation by accused is not waiver ex propiro vigore), but if he has not first initiated the conversations leading to the statements in issue, waiver cannot be found. Id.
 
 
 16
 In this case the state trial court essentially finessed the question dispositive of the Edwards rule's application, which was whether officer Dalton's comment "Be sure to tell your attorney that you had the opportunity to help yourself and didn't," was "interrogation" in legal contemplation. The court did so by "finding" that the admonition did not induce any statement by petitioner and that petitioner "initiated" the conversation that led in due course to his inculpating statement. But because it was undisputed on the state trial record that Dalton's statement was made before petitioner said (or did) anything that could have been considered "initiation," the critical question was whether Dalton's statement constituted renewed "interrogation." If it did, the constitutional inquiry required by Edwards' per se rule was over; the previously invoked right to counsel had been violated and suppression was due without further inquiry.
 
 
 17
 In concluding that petitioner "initiated" the renewed "communications" between him and the police, the state trial court apparently determined that officer Dalton's earlier statement was merely an irrelevant aside and not renewed interrogation, see Bradshaw, 462 U.S. at 1045, perhaps failing fully to appreciate its potential legal significance as "reinterrogation."
 
 
 18
 As the majority states, the magistrate then treated this determination by the state trial court as one of fact, subject to the deference required by 28 U.S.C. Sec. 2254(d), and on that basis accepted it. On this view of things, the magistrate considered the first prong of the Edwards rule resolved against petitioner; he had initiated the ensuing exchange. This left only the second prong inquiry, whether petitioner had in the process knowingly and intelligently waived his previously invoked right. The magistrate properly treated this as a question subject to independent, plenary federal review, and also decided it against petitioner.
 
 
 19
 The magistrate erred in his treatment of the "initiation" question. As above indicated, the real question was whether officer Dalton's comment, which preceded anything that could have been considered initiation of renewed conversation by petitioner, was "reinterrogation." If it was, it immediately violated the right given special protection by the per se rule of Edwards. This was the real question, because if it was reinterrogation, that meant that petitioner did not invite, or "initiate" the renewed conversations that led to the inculpating statement.
 
 
 20
 Rhode Island v. Innis, 446 U.S. 291 (1980), supplies the practical test for determining whether police conduct constitutes interrogation for purpose of applying the prohpylactic rules of Miranda and Edwards. "Interrogation" in the critical sense
 
 
 21
 refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.
 
 
 22
 Id. at 301.
 
 
 23
 For all the reasons recently developed by Justice O'Connor in Miller v. Fenton, 106 U.S. 445 (1985), the ultimate question whether Dalton's comment was, under the Innis test, "reinterrogation" should be treated in this habeas proceeding as "a legal inquiry requiring plenary federal review." Id. at 452. As with the "voluntariness-of-confession" principle at issue in Miller, the Innis principle defining "interrogation" is one that "can be given meaning only through its application to the particular circumstances of a case." Id. And it is one whose application almost invariably involves a complex mix of evidence assessment, evaluation, and judgment that ranges far beyond mere raw fact-finding and credibility determinations. See id. at 453. Consequently, given its centrality to the preservation of constitutional rights of accused persons, its ultimate applications cannot be given over to state triers of fact by according their ultimate determinations the presumptive force commanded by Sec. 2254(d) for findings of fact. See Lamp v. Farrier, 763 F.2d 994 (8th Cir.1985).
 
 
 24
 This means that neither the district court nor we should be required to give presumptive force under 28 U.S.C. Sec. 2254(d) to the state court's determination that officer Dalton's statement was not interrogation to the extent such a determination is necessarily implicit in that court's "finding" that petitioner "initiated" the critical conversation. This does not mean of course that presumptive force would not be due under Sec. 2254(d) to any findings that may have been made on any "subsidiary questions" establishing the context and content and sequence of events surrounding the critical one at issue. But here, the basic, historical facts are undisputed on the state trial record, and the only judicial determination in question is the ultimate one that at least implicitly concluded that Dalton's comment was not "reinterrogation." To the extent the magistrate here accorded presumptive force to that implicit determination in the course of according it to the express determination that petitioner initiated "reinterrogation," this was error.
 
 
 25
 Applying the Innis test to the undisputed facts here, it is clear that officer Dalton's comment was, in context, renewed interrogation undertaken in the absence of counsel, after petitioner had invoked his right to counsel and before petitioner had initiated any renewed conversation or waived his right. The facts demonstrating this are plain and do not need belaboring.
 
 
 26
 The statement was made by the very officer who had been conducting the aborted interrogation, and it was made very shortly after interrogation was stopped by petitioner's request for counsel. It was made before petitioner had said or done anything suggesting he was prepared to engage in any renewed discussion of his conduct or of general matters. Its content, while not express interrogation, was a classic "functional equivalent," being a comment that Dalton should have known was "reasonably likely to elicit an incriminating response." Innis, 446 U.S. at 301. Its whole and only possible purport was that petitioner had foregone an opportunity to help himself by stopping short the police interrogation, and that he might yet retrieve that lost opportunity. It was followed almost immediately by a response which practically guarantees that the petitioner so understood the comment's meaning.
 
 
 27
 The question of direct causation is of course one subject only to inference, but Chief Justice Exum dissenting from the state Supreme Court's affirmance on direct appeal, put his finger directly on the compelling strength of the inference. As he put it, "Defendant's confession was clearly on this record [the same we review collaterally] the product of Officer Dalton's statement. There is nothing in the record to indicate that it could have been the product of anything else." State v. Thomas, 312 S.E.2d 458, 465 (N.C.1984) (Exum, J., dissenting).
 
 
 28
 Because Officer Dalton's statement was clearly "reinterrogation" that violated the per se prophylactic rule of Edwards v. Arizona, I would reverse and direct issuance of the writ conditioned on the state's right within a reasonable time to re-try petitioner without benefit of the confession.