SUMNER, WARDEN *v.* MATA

No. 81–844.   Decided March 22, 1982

PER CURIAM.

This is the second time that this matter has come before us. In *Sumner* v. *Mata,* 449 U. S. 539 (1981), decided last Term, we held that 28 U. S. C. §2254(d) requires federal courts in

habeas proceedings to accord a presumption of correctness to state-court findings of fact. This requirement could not be plainer. The statute explicitly provides that "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction . . . , shall be presumed to be correct." Only when one of seven specified factors is present or the federal court determines that the state-court finding of fact "is not fairly supported by the record" may the presumption properly be viewed as inapplicable or rebutted.[1]

We held further that the presumption of correctness is

---

[1] Section 2254(d) provides:

"(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

"(1) that the merits of the factual dispute were not resolved in the State court hearing;

"(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

"(3) that the material facts were not adequately developed at the State court hearing;

"(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

"(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

"(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

"(7) that the applicant was otherwise denied due process of law in the State court proceeding;

"(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal

equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact, and we held that if a federal court concludes that the presumption of correctness does not control, it must provide a written explanation of the reasoning that led it to conclude that one or more of the first seven factors listed in § 2254(d) were present, or the "reasoning which led it to conclude that the state finding was 'not fairly supported by the record.'" 449 U. S., at 551.

Applying these general principles to the case at hand, we found in our decision last Term that the Court of Appeals for the Ninth Circuit had neither applied the presumption of correctness nor explained why it had not. See *Mata* v. *Sumner*, 611 F. 2d 754 (CA9 1979). Instead, the court had made findings of fact that were "considerably at odds" with the findings made by the California Court of Appeal without any mention whatsoever of § 2254(d). 449 U. S., at 543.

In reaching the conclusion that the Court of Appeals had not followed § 2254(d), we rejected the argument, advanced by respondent Mata, that the findings of fact made by the Court of Appeals and the California court were not in conflict.[2] Mata was convicted in 1973 in state trial court of the

court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances repectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous."

[2] Respondent argued: "All of the facts set forth in the opinion [of the Court of Appeals] are drawn from the record and do not contradict any finding of primary fact made by the California Court of Appeal." Brief for Respondent, O. T. 1980, No. 79–1601, pp. 19–20.

first-degree murder of a fellow inmate. There were three witnesses to the murder, each of whom identified Mata as a participant in the killing.[3] On appeal to the California Court of Appeal, Mata argued for the first time that the photographic lineup procedure used by the state police was so impermissibly suggestive as to deprive him of due process. After examining the evidence,[4] the California Court of Appeal rejected this assertion. It concluded that the pretrial procedures had not been unfair under the test stated by this Court in *Simmons* v. *United States*, 390 U. S. 377 (1968):

> "Reviewing the facts of the present case to determine if the particular photographic identification procedure used contained the proscribed suggestive characteris-

---

[3] Two other inmates—Salvadore Vargas and David Gallegos—were also convicted of taking part in the murder.

[4] The California Court of Appeal summarized the pretrial procedures as follows:

"Three inmate witnesses testified that they saw the stabbing take place. All three—Childress, Almengor, and Allen—identified all three defendants . . . . The witnesses were shown a number of photographs of Tehachapi inmates in an attempt to identify the slayers. Almengor was interviewed and shown photos on October 19, 1972, the day of the incident. He made a possible identification of appellant Vargas, but made possible misidentifications of the other two participants. On October 30, 1972, more recent photos were presented to Almengor and he identified all the appellants. On October 27, 1972, Allen was shown photographs but stated he could not make an identification because the photographs were old. On October 30, 1972, more photos were presented to Allen and he identified all three appellants. On that date Childress also selected all three appellants from photographs shown to him.

"Appellants argue that the witnesses Almengor and Allen were housed in the same segregation unit with appellants, that they were aware that appellants were removed from the segregation unit to have their pictures taken and that this makes their identification inadmissible. But they make no showing, and the record supports none, that the witnesses were in fact influenced in their identification by this action of the investigating officers." App. to Pet. for Cert. C–4 to C–6.

tics, we first find that the photographs were available for cross-examination purposes at the trial. We further find that there is no showing of influence by the investigating officers: that the witnesses had an adequate opportunity to view the crime; and that their descriptions are accurate. The circumstances thus indicate the inherent fairness of the procedure, and we find no error in the admission of the identification evidence." App. to Pet. for Cert. C–8.

The Court of Appeals for the Ninth Circuit reached a different conclusion,[5] and did so on the basis of factfindings that were clearly in conflict with those made by the state court. We noted that the Court of Appeals had relied, *inter alia*, on its own conflicting findings that "(1) the circumstances surrounding the witnesses' observation of the crime were such that there was a grave likelihood of misidentification; (2) the witnesses had failed to give sufficiently detailed descriptions of the assailant; and (3) considerable pressure from both prison officials and prison factions had been brought to bear on the witnesses." *Sumner* v. *Mata*, 449 U. S., at 543.[6]

---

[5] The decision of the Court of Appeals for the Ninth Circuit differed not only with that of the California Court of Appeal on direct appeal but also with the decision of three levels of state courts in state habeas proceedings and with the decision of the Federal District Court in federal habeas proceedings.

[6] In dissent JUSTICE BRENNAN argued that there was no conflict between the facts as found by the state court and as found by the Court of Appeals. He argued that the California court's finding that the witnesses had an opportunity to view the killing was not in conflict with a finding by the Court of Appeals that the witnesses were "quite likely" distracted at the time of the killing. He argued further that the California court's finding that the descriptions given by the witnesses were "accurate" was not in conflict with a finding that these descriptions were not detailed. Finally, the dissent appears to have considered that the existence of influence by prison officials was a not a question of fact but of law. 449 U. S., at 556. It is obvious that a majority of the Court did not find this reasoning persuasive. On our remand, the Court of Appeals apparently adopted JUSTICE BRENNAN's dissenting views. See 649 F. 2d 713, 716 (CA9 1981).

We concluded that the "findings made by the Court of Appeals for the Ninth Circuit are considerably at odds with the findings made by the California Court of Appeal." *Ibid.* We remanded so that the Court of Appeals could review its determination of the issue and either apply the statutory presumption or explain why the presumption did not apply in light of the factors listed in § 2254(d). We expressed no view as to whether the procedures had been impermissibly suggestive. That was a question for the Court of Appeals to decide in the first instance after complying with § 2254(d).

On remand, the Court of Appeals found that it was not necessary for it to apply the presumption of correctness or explain why the presumption should not be applied. 649 F. 2d 713 (CA9 1981). Rather, agreeing with the argument advanced by Mata and the dissenting opinion in *Sumner* v. *Mata, supra,* the court concluded that § 2254(d) was simply irrelevant in this case because its factfindings in no way differed from those of the state court.[7] It argued that its disagreement with the state court was "over the *legal and constitutional significance* of certain facts" and not over the facts themselves. 649 F. 2d, at 716. It found that whether or not the pretrial photographic identification procedure used in this case was impermissibly suggestive was a mixed question of law and fact as to which the presumption of correctness did not apply. And it reinstated its conclusion that the pretrial procedures had been impermissibly suggestive and that Mata therefore was entitled to release or a new trial.[8]

We have again reviewed this case and conclude that the

---

[7] "Lest the reviewing court 'be left to guess' as to our reasons for granting habeas relief notwithstanding the provisions of § 2254(d), we reiterate: As our original analysis indicates . . . we substantially agree with the 'historical' or 'basic' facts adduced by the California Court of Appeal Fifth Appellate District . . . . We disagree, however, with the application of the *Simmons* standard . . . to the totality of the circumstances of this case." *Id.,* at 717.

[8] Judge Sneed dissented from the Court of Appeals' original decision,

Court of Appeals apparently misunderstood the terms of our remand.  Nor did it comply with the requirements of § 2254(d).  We agree with the Court of Appeals that the ultimate question as to the constitutionality of the pretrial identification procedures used in this case is a mixed question of law and fact that is not governed by § 2254(d).[9]  In deciding this question, the federal court may give different weight to the facts as found by the state court and may reach a different conclusion in light of the legal standard.  But the questions of fact that underlie this ultimate conclusion *are* governed by the statutory presumption as our earlier opinion made clear.  Thus, whether the witnesses in this case had an opportunity to observe the crime or were too distracted; whether the witnesses gave a detailed, accurate description; and whether the witnesses were under pressure from prison officials or others are all questions of fact as to which the statutory presumption applies.[10]

Of course, the federal courts are not necessarily bound by the state court's findings.  Section 2254(d) permits a federal court to conclude, for example, that a state finding was "not fairly supported by the record."  But the statute does require the federal courts to face up to any disagreement as to the facts and to defer to the state court unless one of the fac-

---

and he dissented again "respectfully, and to some degree sorrowfully." *Ibid.*

[9] Cf. *Cuyler* v. *Sullivan,* 446 U. S. 335 (1980); *Brewer* v. *Williams,* 430 U. S. 387 (1977); *Neil* v. *Biggers,* 409 U. S. 188, 193, n. 3 (1972).

[10] In *Neil* v. *Biggers, supra,* at 199–200, we noted that "the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."  Each of these "factors" requires a finding of historical fact as to which § 2254(d) applies.  The ultimate conclusion as to whether the facts as found state a constitutional violation is a mixed question of law and fact as to which the statutory presumption does not apply.

tors listed in § 2254(d) is found. Although the distinction between law and fact is not always easily drawn, we deal here with a statute that requires the federal courts to show a high measure of deference to the factfindings made by the state courts. To adopt the Court of Appeals' view would be to deprive this statutory command of its important significance.

Our remand directed the Court of Appeals to re-examine its findings in light of the statutory presumption. We pointed the way by identifying certain of its findings that we considered to be at odds with the findings of the California Court of Appeal. We asked the Court of Appeals to apply the statutory presumption or explain why the presumption was not applicable in view of the factors listed in the statute. The Court of Appeals did neither. Accordingly, we again must remand. Again we note that "we are not to be understood as agreeing or disagreeing with the majority of the Court of Appeals on the merits of the issue of impermissibly suggestive identification procedures." 449 U. S., at 552.[11]

The motion of respondent for leave to proceed *in forma pauperis* is granted. The petition for writ of certiorari is granted, the judgment of the Court of Appeals for the Ninth Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

In my view, the opinion of the Court of Appeals for the Ninth Circuit not only accords with the views I expressed last Term, which, as the Court points out, *ante,* at 595, n. 6,

---

[11] Because we remand for failure to comply with § 2254(d), we do not reach the second question presented in the petition for certiorari as to whether the Court of Appeals applied the proper legal standard in determining that the pretrial identification procedures used in this case were constitutionally defective.

did not prevail, but also with the principles expressed in the Court's opinion last Term and restated by the Court today. It is on this basis that I dissent from the Court's second, and in this instance summary,* vacation.

When this case was before us last Term, I expressed the view that it was unnecessary for the Court of Appeals to explain its failure to consider the restrictions of § 2254(d), because "the difference between the Court of Appeals for the Ninth Circuit and the California Court of Appeal was over the applicable *legal standard,* and not over the particular *facts* of the case," rendering § 2254(d) obviously inapplicable. *Sumner* v. *Mata,* 449 U. S. 539, 558–559 (1981). The Court disagreed, holding that in all cases federal courts must apply § 2254(d) or explain why it was inapplicable: "No court reviewing the grant of an application for habeas corpus should be left to guess as to the habeas court's reasons for granting relief notwithstanding the provisions of § 2254(d)." 449 U. S., at 552. But I thought then, and the Court today agrees, that § 2254(d) is inapplicable to the ultimate question whether pretrial identification procedures are "impermissibly suggestive," *Simmons* v. *United States,* 390 U. S. 377, 384 (1968). *Ante,* at 597.

The Court's explicit recognition that § 2254(d) does not govern the ultimate question as to the constitutionality of the pretrial identification procedures used in this case renders all the more confounding the Court's present disposition. Following this Court's directive on remand, the Court of Appeals clarified the basis for its original opinion: Section 2254 (d) was inapplicable because the federal court "substantially agree[d] with the 'historical' or 'basic' facts adduced by the

---

*Although a case in which a lower court misunderstands the terms of our remand might in some instances be an appropriate candidate for summary reversal, in this case, where there is no unanimous agreement that the remand was not complied with, I would not reverse without plenary consideration.

California Court of Appeal," but disagreed with "the *legal and constitutional significance* of certain facts," and thus the "*legal* conclusion" of the state court. 649 F. 2d 713, 716–717 (1981).

I can only interpret this second vacation as evincing either the suspicion that the Court of Appeals, despite its protestations to the contrary, actually relied on factual findings inconsistent with those of the state court or that the Court of Appeals failed to distinguish its ultimate conclusion from subsidiary questions of fact. The unfairness of such suspicion is manifest. There is no reason to think, borrowing from this Court's declaration to the Court of Appeals last Term, that, despite this Court's difference of opinion, the judges of the Ninth Circuit are "not doing their mortal best to discharge their oath of office." 449 U. S., at 549.

There is no basis for disbelieving the Court of Appeals' assurance that it has accepted the factual findings of the California Court of Appeal and that it granted relief only because it concluded that the pretrial identification procedures employed in this case were, as a matter of law, unconstitutional. Accordingly, I dissent and would affirm the judgment of the Court of Appeals.

JUSTICE STEVENS, dissenting.

Once again the Court's preoccupation with procedural niceties has needlessly complicated the disposition of a federal habeas corpus petition. Cf. *Rose* v. *Lundy, ante,* p. 509. Lurking in the background of this case is the question whether the failure to conduct a lineup has any bearing on the validity of a photographic identification. The Court may one day confront that question. For the present, however, it is more concerned with the Court of Appeals' misunderstanding of the ill-defined mandate of *Sumner* v. *Mata,* 449 U. S. 539, and 28 U. S. C. § 2254(d).

We now seem to agree that § 2254(d) applies to a "basic, primary, or historical fact" and that it does not apply to a "mixed question of law and fact." The articulation of this

proposition certainly is an improvement on the Court's opin-
ion of last Term, which understandably confounded the Court
of Appeals on remand.  Judge Sneed in dissent read—incor-
rectly, it turns out—the Court's opinion to apply § 2254(d) to
mixed questions of law and fact.  The panel majority read—
correctly, it turns out—the Court's opinion to apply § 2254(d)
only to historical facts.  The panel majority held that
§ 2254(d) simply was not implicated in this case because there
was no conflict between its findings of historical facts and
those of the California Court of Appeal.  The disagreement
today is whether that holding is correct.  In my opinion, this
question is more difficult than either the *per curiam* or
JUSTICE BRENNAN's dissent indicates.*  Indeed, the diffi-
culty of the analysis behooves this Court either to "poin[t] the

---

*The California Court of Appeal and the Court of Appeals for the Ninth
Circuit worked from the same state trial court record.  The state court
made the rather brief findings "that there is no showing of influence by the
investigating officers: that the witnesses had an adequate opportunity to
view the crime; and that their descriptions are accurate."  App. to Pet. for
Cert. C–8.  The federal court analyzed the evidence in greater detail.  It
found that although the fight among witnesses and the perpetrators of the
crime "would have at least provided an opportunity for the witnesses to
observe the perpetrators of the crime[,] . . . the violence accompanying the
incident and the threat presented by the knife would have, quite likely, di-
verted the witnesses' attention"; that "the descriptions of the assailants
were clearly not detailed descriptions"; and that "considerable pressure
from both the prison officers and opposing prison factions had admittedly
been brought to bear on bóth witnesses."  *Mata* v. *Sumner*, 611 F. 2d 754,
758–759 (1979).

Putting aside the problem of separating findings of historical fact from
answers to mixed questions of law and fact, it is mostly an ineffectual exer-
cise to attempt to decide whether the two sets of findings are conflicting.
The first and second of the three findings of the federal court seem to sup-
plement, but not contradict, the roughly corresponding findings of the
state court.  The third does conflict with the state court's determination
that there was "no showing of influence," but the reason for the conflict is
fully explained by the federal court's reference to evidence in the record
that the state court apparently overlooked or ignored.  The Court of Ap-
peals might have better complied with § 2254(d) by referring to this
explanation.  See § 2254(d)(8).  In any event, since neither appellate court

way" in a more extensive and reasoned fashion or to rely upon the good faith and good sense of the federal courts in applying the rather straightforward principle of § 2254(d) even though in particular cases its application might be unclear. The Court does neither today. Instead, it merely delays, for the sake of a procedural nicety, either the habeas corpus relief to which the Court of Appeals has held the respondent is entitled or a consideration of the merits of the only significant question that the petitioner has raised. I respectfully dissent from the Court's summary disposition.

---

had the benefit of findings of fact by the judge who heard the evidence, it is a strange use of our scarce resources to review such trivial differences between two appellate courts' analyses of this trial record.