McKinley ROBINSON, Appellant,

v.

Donald WYRICK, Appellee.

No. 83–1595.

United States Court of Appeals,
Eighth Circuit.

Submitted March 21, 1984.

Decided June 6, 1984.

Rehearing Denied June 28, 1984.

Alan J. Agathen, Clayton, Mo., for appellant.

John Ashcroft, Atty. Gen., George Cox, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before ROSS, ARNOLD and BOWMAN, Circuit Judges.

ROSS, Circuit Judge.

## I. Procedural Posture

Appellant McKinley Robinson was indicted for the first degree murder of Harry Shelton, Jr., and for the assault of Police Officer Richard Nagel with a deadly weapon with intent to kill. The indictment was issued on February 4, 1977. After a three-day trial in Missouri circuit court the jury returned a verdict of guilty on the assault charge, but was unable to reach a verdict on the murder charge, so a mistrial was declared on that count. The court sentenced Robinson to 75 years for the assault conviction on February 3, 1978. Robinson appealed the conviction to the Missouri Court of Appeals, which affirmed it on October 2, 1979. *State v. Robinson,* 591 S.W.2d 18 (Mo.App.1979). Robinson sought a rehearing which was denied; post conviction relief was also denied. Robinson filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on October 26, 1982. The district court[1] referred the application to Magistrate David Noce for review. 28 U.S.C. § 636(b). Judge Nangle accepted Magistrate Noce's report and recommendation and denied the writ on March 31, 1983. Robinson appeals. For reversal, he argues that 1) the state trial court erred in allowing an in-court identification based on an impermissibly

---

1. The Honorable John F. Nangle, United States District Court for the Eastern District of Missouri.

suggestive photographic lineup, and 2) the state trial court erred in denying his motion to sever the two offenses for trial.

## II. Background

On the evening of December 31, 1976, a St. Louis police officer found the body of Harry Shelton, Jr., lying on the ground near 29th and Market Streets in St. Louis. Shelton had been shot three times. At approximately 5:00 p.m. the same evening, St. Louis Police Officer Richard Nagel was driving southbound on Highway 70. He noticed a large black and blue car creating a traffic hazard near the Sixth Street exit. Nagel stopped on the shoulder of the exit ramp and the other automobile stopped about 75 feet behind his cruiser. Nagel left his cruiser and walked back toward the other car. As Nagel approached the car, the driver got out, pulled out a shotgun and shot the officer in the right hip. The assailant got back into his car and drove away. Nagel fired six shots at the car as it escaped, then returned to his cruiser and transmitted a description of the suspect and automobile over the police radio.

Shortly after the shooting, Police Officer James Lawrence heard Officer Nagel's broadcast and sighted an automobile and driver matching the description Nagel had given. Officer Lawrence followed the car for some distance before turning on his siren and red lights. He chased the car into East St. Louis, Illinois, where he arrested Robinson without further incident. There was a shotgun inside the car and a slug for the shotgun in Robinson's pocket. Robinson also had a pistol in his pocket. The car he was driving belonged to Harry Shelton, Jr., who had been found shot to death earlier the same evening.

As stated above, Robinson was tried for both Shelton's murder and assault on Officer Nagel.

## III. Discussion

### A. Lineup Procedure

Robinson contends that Officer Nagel's in-court identification of him resulted from an impermissibly suggestive photographic lineup.

On the morning following the assault, Officer Nagel was shown five photographs, including one of Robinson. Robinson's picture had his name on it, as did some of the others; the names were not covered over or obscured in any way. Nagel identified Robinson as his attacker. Nagel testified that he had read the morning newspaper that day. In that particular edition of the paper, there was a story about the assault, including the names and pictures of both the officer and Robinson. The evidence was in dispute as to whether Nagel read the newspaper before or after he positively identified Robinson. Robinson argues that Nagel did see the article before making the identification and this, coupled with the fact that his name was on his "mug shot," rendered the photographic lineup unconstitutionally suggestive. It follows then, he contends, that the officer's in-court identification was unreliable.

██ Both the state courts and the district court found that the photographic lineup was not unduly suggestive. In effect, Robinson urges this court to make a different factual determination. Factual findings made by the state court system shall be presumed to be correct unless one of seven conditions specifically set forth in 28 U.S.C. § 2254(d) is found to exist. *Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981). The standard of review clearly places a heavy burden on the appellant; *Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) states that the court of appeals must give state factual determinations a "high measure of deference." *Id.* 102 S.Ct. at 1307.

██ Finally, even if the photographic lineup was impermissibly suggestive, the courtroom identification is still admissible if it is sufficiently reliable. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). "The central question is whether under the 'totality of the circumstances' the identification was reliable even though the procedure was suggestive." *Id.* at 106, 97 S.Ct. at 2249; *Harris v.*

*Wyrick,* 644 F.2d 710, 712 (8th Cir.1981). The factors to be considered in evaluating the likelihood of mistaken identification include the opportunity of the witness to view the suspect at the scene of the crime, the witness's degree of attention, the accuracy of his prior description of the suspect, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Harris v. Wyrick, supra,* 644 F.2d at 712.

The Missouri Court of Appeals found that there was an independent basis for the in-court identification. *State v. Robinson,* 591 S.W.2d 18, 20 (Mo.App. 1979). The district court reached the same conclusion based on the following findings: (1) Nagel, as the victim of the assault and a trained police officer, was highly attentive of the man who assaulted him; (2) he continually observed his assailant in good light for approximately 30 seconds from a distance of 25–30 feet; (3) although he may not have correctly identified the assailant's clothing, he could identify the man's face; (4) he accurately described the assailant and the automobile he was driving so as to enable another officer to apprehend Robinson; (5) the pretrial confrontation occurred less than one day after the assault; (6) Nagel positively identified Robinson from the photographs without hesitation; and (7) Nagel positively identified Robinson at trial. We agree with these conclusions and find no error.

### B. Severance

Robinson argues that the trial court erred in denying his motion to sever the offenses with which he was charged: first degree murder and assault with intent to kill with a deadly weapon. In effect, Robinson was charged with the murder of Harry Shelton, Jr. and with assault while in flight from the commission of the murder. As stated above, the jury was unable to reach a verdict on the murder charge and convicted Robinson of assault with intent to kill. Under the state rules of criminal procedure then in effect, rule 24.04(b) allowed for the joinder of offenses in a single trial if they were based on the same act or two or more acts which were part of the same transaction or were parts of a common scheme or plan. MO.ANN.STAT. CRIM.R. 24.04 (Vernon 1977). Rule 24.04 appears to have been based on FED.R. CRIM.P. 8(a), which contains virtually the same language.

The trial judge found that joinder was appropriate because it appeared that both offenses arose from one transaction or series of transactions. To obtain federal habeas corpus relief, the joinder "must actually render petitioner's state trial fundamentally unfair and hence, violative of due process." *Tribbitt v. Wainwright,* 540 F.2d 840 (5th Cir.1976), *cert. denied,* 430 U.S. 910, 97 S.Ct. 1184, 51 L.Ed.2d 587 (1977). In the present case, there has been no showing that Robinson was prejudiced; the jury could not find him guilty of Shelton's murder, so it appears that the jurors were able to distinguish the two charges. Finally, the decision to join offenses in a single trial is a matter within the discretion of the trial judge under both Missouri and federal law, *United States v. King,* 567 F.2d 785, 788 (8th Cir.1977), *cert. denied,* 435 U.S. 945, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978); *State v. Robinson,* 591 S.W.2d 18 (Mo.App.1979). That decision may not normally be disturbed on review, and we decline to do so here.

Accordingly, we affirm the district court's denial of the writ.