922 F.2d 841
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gregory L. OAKLEY, Petitioner-Appellant,
v.
Steve SMITH, Warden, et al., Respondents-Appellees.
 No. 89-6473.
 United States Court of Appeals, Sixth Circuit.
 Jan. 8, 1991.
 
 Before DAVID A. NELSON and RYAN, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from the denial of a writ of habeas corpus sought pursuant to 28 U.S.C. Sec. 2254. The petitioner-appellant contends that he was denied the effective assistance of counsel at his state-court trial and that an eyewitness identification procedure used by the state was impermissibly suggestive. Finding these contentions unpersuasive, we shall affirm the denial of the writ.
 
 
 2
 * Petitioner-appellant Gregory Oakley, a veterinarian, was indicted by the Commonwealth of Kentucky for assault, criminal attempt rape, and burglary. Following a jury trial at which his defense was conducted by experienced counsel, Dr. Oakley was convicted of burglary and criminal attempt rape, both in the first degree. At a post-conviction hearing where Dr. Oakley was represented by the same counsel, the jury determined that the doctor was also a persistent felony offender in the second degree within the meaning of Ky.Rev.Stat. 532.080; on the strength of this determination, the jury recommended a sentence of 20 years on the attempted rape charge and 30 years on the burglary charge. The trial court accepted this recommendation, ordering that the sentences run concurrently. Dr. Oakley took a direct appeal to the Kentucky Supreme Court, which affirmed the judgment of the trial court.
 
 
 3
 Claiming ineffective assistance of counsel, Dr. Oakley then moved to vacate the trial court's judgment. This motion was denied. The Kentucky Court of Appeals affirmed the denial, and the Kentucky Supreme Court declined further review.
 
 
 4
 Dr. Oakley next filed a habeas corpus petition in federal district court. His petition alleged that he had not had the effective assistance of counsel for his defense because (1) his attorney failed to object to inadmissible evidence offered to establish the persistent felony offender offense; (2) his attorney failed to conduct a minimal investigation into a prior conviction, admitted at trial, that should have been excluded on due process grounds; and (3) his attorney failed to advise him of the double jeopardy ramifications of a mistrial that was offered by the trial court and waived by Dr. Oakley. The petition also alleged a denial of due process in that the identification procedures used by the Commonwealth were unnecessarily suggestive and conducive to mistaken identification.
 
 
 5
 The district court (Allen, J.) denied the petition, as well as a postjudgment motion to amend and/or alter findings of fact. This appeal followed.
 
 II
 
 6
 The offenses of which Dr. Oakley was convicted occurred on the afternoon of September 9, 1983, at the home of the complaining witness, a 13-year old girl. The girl was home alone, as she testified, and was talking on a kitchen telephone when she heard a door open. Thinking it was a friend, she ended her telephone conversation and walked out of the kitchen. Instead of the friend, she found herself facing a tall man with a knife.
 
 
 7
 The man demanded that the girl take off her clothes. She remonstrated with him, and when he persisted in his demand she attempted to fight her way past him. He pushed her against a kitchen counter and stabbed her with his knife. The man then told her "I'll leave you alone if you'll go in the bathroom for 10 minutes." Following some further conversation she entered the bathroom and locked the door behind her. She heard the man leave the house, after which she ran outside in time to see him drive off in what she described as a black pickup truck. Her testimony left no doubt that she had ample opportunity to observe the man's features, and she was able to give the police a detailed description of him.
 
 
 8
 On two occasions during the months that followed the girl was shown photo packs to see if she could pick out a picture of her attacker. She could not make a positive identification, although she said two of the pictures resembled the man. Then on January 12, 1984, the girl's father, a police detective, took her to a restaurant where Dr. Oakley--whose pickup truck had made him a suspect--was scheduled to put in an appearance. The girl was told that a suspect would be there, but she was given no description of him.
 
 
 9
 The girl's father testified that Dr. Oakley walked into the restaurant as the daughter was being served; because of the position of the waitress, the girl could not see the doctor until he had been seated. When she finally saw him she said "Dad, I think that is him back there." Her father told her to get a good close look as they left the restaurant. Dr. Oakley tried to cover his face as they walked out, according to the testimony, but the girl was able to get a good look at him nonetheless. She testified that she was positive he was the man:
 
 
 10
 "There is no doubt in my mind that that is him. When that happens, you can't forget a face like that. You know it is him. I've seen pictures of other people and I told them, I said that resembles him but that is not him. And there is no doubt in my mind. If there was, I would not be up here right now."
 
 III
 
 11
 We turn now to Dr. Oakley's allegations of ineffective assistance of counsel. In Strickland v. Washington, 466 U.S. 668, 687 (1984), the Supreme Court set forth two requirements for establishing such claims:
 
 
 12
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
 
 
 13
 In evaluating the performance of trial counsel, a reviewing court must remember that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. Indeed,
 
 
 14
 "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to secondguess counsel's assistance after conviction or adverse sentence, and it is all to easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." Id. at 689.
 
 
 15
 * Dr. Oakley contends, first, that he was denied the effective assistance of counsel because his attorney failed to object to inadmissible evidence offered by a probation officer to establish the defendant's status as a persistent felony offender (PFO) in the second degree under Ky.Rev.Stat. 532.080(2). The statute requires the government to prove, among other things, "[t]hat the offender was over the age of eighteen (18) years at the time the [prior] offense was committed...." Ky.Rev.Stat. 532.080(2)(b). Dr. Oakley argues that his attorney should have objected when Roger Garvey, a probation officer, testified that Dr. Oakley's prior felony was committed in 1981, when Dr. Oakley was 38 years old.
 
 
 16
 Under Kentucky law records from the Department of Probation and Parole are not admissible to establish the date of previous offenses for the purpose of proving PFO status. Hobbs v. Commonwealth, 655 S.W.2d 472, 474 (Ky.1983) (Liebson, J., concurring), cert. denied, 465 U.S. 1067 (1984). As we read the relevant portions of the trial transcript, however, Dr. Oakley's attorney did object to the use of such records; his objection was simply overruled.[1] In moving for judgment n.o.v., moreover, Dr. Oakley's attorney argued that the prosecution failed to prove that the defendant had reached the requisite age at the time of the prior felony. Dr. Oakley clearly did not receive ineffective assistance on this point.
 
 B
 
 17
 The prior felony occurred when Dr. Oakley injected his step-daughter with a tranquilizer against her will. Because the attorney who acted as a special prosecutor in connection with that offense was also representing Dr. Oakley's wife in a divorce action, Dr. Oakley now argues that the failure to have the prior conviction suppressed on due process grounds constitutes ineffective assistance of counsel. Absent a demonstration of selective prosecution or comparable abuse of the criminal justice system, however, the fact that a prosecutor may have had a personal interest in securing a conviction does not normally justify the allowance of a collateral attack on the conviction. See Dick v. Scroggy, 882 F.2d 192 (6th Cir.1989). In the case at bar we have no basis for concluding that the prior felony conviction was a product of selective prosecution. Dr. Oakley did testify that he had been coerced into entering a plea of guilty because of the dual representation, but the Kentucky trial court specifically found, in its ruling on the motion to vacate, that Dr. Oakley's testimony was not credible. This finding of fact is entitled to a presumption of correctness under Sumner v. Mata, 455 U.S. 591, 592 (1982). Accordingly, the failure on the part of Dr. Oakley's attorney to attempt to suppress the prior conviction did not "prejudice" the defense within the meaning of Strickland.
 
 C
 
 18
 During the course of the state court proceedings a witness for the prosecution testified that she saw a truck bearing Dr. Oakley's license number at the scene of the attempted rape. There was a motion for a mistrial on the ground that the prosecution's failure to give the defense advance notice of this testimony violated a pretrial discovery order. The trial judge indicated that he would either grant a mistrial or admonish the jury to ignore the witness' testimony; the choice was up to Dr. Oakley. He chose the admonition, but now claims that his attorney failed to inform him of the relevant double jeopardy considerations.
 
 
 19
 The problem with this argument is that a defendant's motion for mistrial, if granted, removes any double jeopardy bar to retrial--unless, of course, the prosecutor intentionally provoked the motion, or unless the prosecutor's conduct rose to the level of harassment. Ky.Rev.Stat. 505.030; Stamps v. Commonwealth, 648 S.W.2d 868, 868-869 (Ky.1983). In the instant case the district court found no evidence that would support a finding of intentional provocation or harassment. We find none either. Even if Dr. Oakley had chosen a mistrial, therefore, he would not have been successful in claiming double jeopardy. His attorney's failure to discuss the issue with him thus met neither of the requirements of Strickland.
 
 IV
 
 20
 Dr. Oakley claims, finally, that the eyewitness identification procedure used in this case was so conducive to irreparable mistaken identification as to have violated his due process rights.
 
 
 21
 The Supreme Court held in Neil v. Biggers, 409 U.S. 188 (1972), that a court reviewing such a claim must consider "the totality of the circumstances," id. at 196, including the following factors:
 
 
 22
 "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the time of confrontation, and the length of time between the crime and the confrontation." Id. at 199.
 
 
 23
 The girl whom Dr. Oakley was accused of trying to rape testified that the attempt lasted five to seven minutes, during which time she had no difficulty in seeing her assailant's face. Her initial description of the man was highly accurate: she described him as a white male in his late 30s to early 40s, between 5'10" and 6 feet tall, thin, weighing around 150 pounds, with grayish-brown hair and a ruddy complexion. Dr. Oakley is in fact a white male who was 40 years old at the time of the attack, 6 feet tall, 160 pounds, with brown hair. The girl identified Dr. Oakley twice: first at the restaurant and then in court. The meeting at the restaurant occurred only four months after the crime--a shorter period of time than the seven months that elapsed in Neil itself. See 409 U.S. at 201. Under the totality of the circumstances, we are satisfied that the identification procedure was not shown to have violated constitutional norms.
 
 
 24
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Both the Kentucky trial judge and District Judge Allen read the transcript the same way we do. The findings of fact of the state court judge are entitled to a presumption of correctness under Sumner v. Mata, 455 U.S. 591, 592 (1982). The district court's findings of fact must be upheld unless clearly erroneous. Sutton v. Evans, No. 89-6455, slip op. at 5 (6th Cir. November 8, 1990)