951 F.2d 361
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Donald James MEYER, Petitioner-Appellant,
v.
George DEEDS, et al., Respondents-Appellees.
 No. 91-15041.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1991.
Decided Dec. 19, 1991.
 
 Before BOOCHEVER, WILLIAM A. NORRIS and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Donald Meyer was convicted in state court, exhausted his state remedies, filed a petition for a writ of habeas corpus in federal district court, and now appeals the denial of his petition.
 
 
 3
 Meyer's first claim is that he was denied due process of law by an impermissibly suggestive identification procedure in the parking lot of the hotel where the robbery occurred. Within an hour or two of the robbery, the police brought the victims to identify Meyer. Meyer was handcuffed and stood next to several policemen in plain clothes, who were holding their hands behind their backs. Meyer argues that this was impermissibly suggestive because the victims could tell that he was the only person wearing handcuffs, the lighting was poor, and Meyer's clothes were in disarray from the prior chase.
 
 
 4
 The district court correctly determined that even if the show up procedure was suggestive, it was nonetheless reliable under the totality of the circumstances. This analysis conformed to Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Historical facts determined by the state court are given a presumption of correctness, while the weight given to these facts and the ultimate question of the constitutionality of an identification is reviewed de novo. Sumner v. Mata, 455 U.S. 591, 597, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982).
 
 
 5
 Under United States v. Bagley, 772 F.2d 482, 491-93 (9th Cir.1985), cert. denied, 475 U.S. 1023 (1986), the showup plainly did not deny Meyer due process. The victims accurately described the robber prior to the identification. One of the victims had taken particular care to study the robber's face and plant it firmly in his memory, and both were certain of their identifications. They had an interest in inducing the police to continue their search for the robber, if Meyer was the wrong man. The identification occurred shortly after the robbery while the victims' memories were still fresh.
 
 
 6
 Meyer next argues that the chain of custody of the items allegedly found in Meyer's pockets was not sufficiently established to permit admission of those items into evidence consistent with his right to due process of law. The state court's evidentiary ruling is subject to federal habeas corpus review only if the alleged error deprived the defendant of fundamental fairness in violation of due process. Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir.1991).
 
 
 7
 Meyer suggests that the security guards did not obtain the incriminating items from his pockets, but instead planted this material in the box on the hood of the police car. The material included the victims' room keys, identification and money. There was no evidence of tampering. Cf. United States v. Dickerson, 873 F.2d 1181 (9th Cir.1989). Meyer's far fetched theory would have required the victims of the robbery to join the conspiracy to frame Meyer within the twenty minutes or so that the box was unwatched on the car. The testimony offered by the victims at trial laid a foundation for admission of the evidence, and the state judge could properly determine that the chain of custody was sufficiently established for admissibility. Meyer's dispute went only to the strength of the evidence, not its admissibility.
 
 
 8
 Meyer's next argument is that he was denied effective assistance of counsel because his attorney failed adequately to investigate and prepare for trial, failed to ask for a hearing outside the presence of the jury regarding admissibility of the identification, and failed adequately to brief Meyer's direct appeal in the state court. Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant must demonstrate that his attorney's efforts fell outside the range of professionally competent assistance and that he was thereby prejudiced. Review of counsel's performance is highly deferential, with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.
 
 
 9
 The identification issue is resolved by our analysis of the substantive merits of that claim. Counsel's decision to challenge the reliability of the show up in front of the jury where it might cause a reasonable doubt about the identification, rather than before the court where it would have been futile, was well within the range of strategy judgments recognized by Strickland. Nothing in the record supports Meyer's claim that his trial counsel failed to investigate his case properly or that his appellate counsel failed to present an adequate appeal. A critical aspect of a criminal defense attorney's task is to make judgments about how to investigate a case, which witnesses to call or cross-examine, and which points to raise on appeal. For example, treatises typically say that in an appeal, "an interminable number of issues is likely to dilute the effect of even those that may be worthy." Alan Hornstein, Appellate Advocacy in a Nutshell 15 (1984). Meyer offers no record citations and no evidentiary support for his claim that his lawyer did not interview or investigate any of the witnesses, obtain any reports from the security guards or the police, or obtain the radio log. In the absence of any evidence to support these assertions, we do not evaluate whether failure to take these steps would amount to ineffective assistance of counsel.
 
 
 10
 Meyer is also unable to make the showing of prejudice required under Strickland. He was caught red-handed with the victims' money, identification and room keys, and he was positively identified by two of the victims. His apprehension followed a dramatic shootout in the parking lot. Clarence Darrow probably could not have established a reasonable doubt.
 
 
 11
 Meyer next claims that his fifth amendment right not to be compelled to testify was violated by the prosecutor's comment regarding his failure to tell the arresting officer what had happened. Meyer took the witness stand and testified that he thought he would get an opportunity to tell the arresting officer what had happened, "but it didn't work that way." Then on cross examination, the prosecutor asked, "now you testified that you thought you would get an opportunity to talk to Detective Butterfield about what happened?" The prosecutor followed up Meyer's affirmative response with the question "you had an opportunity, did you not?" Taken in context, this was not a comment on Meyer's silence at all. The prosecutor did not elicit the evidence of Meyer's silence. Meyer put it in, to show that he had been denied an opportunity to explain what had happened. The prosecutor merely rebutted Meyer's implication that Meyer had been deprived of the opportunity to explain. The prosecutor's comment in the closing argument was to the same effect. This was a fair response to Meyer's claim that he was deprived of the chance to tell his story. United States v. Robinson, 485 U.S. 25, 31-32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988).
 
 
 12
 Meyer makes various other claims of prosecutorial misconduct in violation of his federal right to due process. In closing argument, in response to Meyer's argument that one of the victims, a young girl, should have testified, the prosecutor told the jury "if you had to bring in the victim of a murder you would never prosecute your murderer because the victim is dead." In context we do not see this as misconduct denying Meyer a fair trial. There was no suggestion or implication that any of the victims in Meyer's robbery were dead, and the jury could not possibly be confused about this.
 
 
 13
 Meyer's claim that he was deprived of due process because of the prosecutorial misconduct at the preliminary hearing is also insubstantial. The prosecutor's identification of the defendant to the victims is not violative of the defendant's right to due process because the victims had already reliably identified the defendant at the show up. None of these events occurred in the presence of the jury, so they have little relevance to the fairness of the trial.
 
 
 14
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3