Anthony **CHAPMAN**, Petitioner,

v.

**Larry R. MEACHUM, Commissioner
of Corrections, Respondent.**

**Civ. No. N–90–0003 (JAC).**

United States District Court,
D. Connecticut.

April 8, 1992.

Timothy Everett, University of Connecticut Legal Clinic, Hartford, Conn., for petitioner.

Julia DiCiccio, Office of the Chief State's Atty., Wallingford, Conn., for respondent.

## ORDER

JOSÉ A. CABRANES, District Judge.

APPROVED and ADOPTED over objection as the ruling of the court. *See* Endorsement Ruling entered today. It is so ordered.

## RECOMMENDED RULING ON PETITION FOR WRIT OF HABEAS CORPUS

F. OWEN EAGAN, United States Magistrate Judge.

The petitioner, Anthony Chapman, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254 on the ground that two alleged errors committed by the court at his trial violated his constitutional right to a fair trial. The petitioner has moved for summary judgment on his petition. For the following reasons, petitioner's motion for summary judgment and his amended petition for a writ of habeas corpus are denied.

## FACTUAL BACKGROUND

After review of the record of this habeas action, including the trial transcript, the court essentially adopts the factual findings of the Appellate Court of the State of Connecticut, which the parties do not dispute, and accords to the factual findings the presumption of correctness. *See State*

*v. Chapman*, 16 Conn.App. 38, 39–41, 546 A.2d 929 (1988).[1] At approximately 9:00 p.m. on July 26, 1985, the petitioner, Melvin Daniels and James Owens robbed a restaurant in New Haven, Connecticut. One of the three men wore a stocking mask and the other two wore bandannas, and one of the men wearing a bandanna carried a sawed-off shotgun. The robbers took cash from the register and cash and some personal belongings from the restaurant employees and customers.

Shortly before 10:00 p.m. on the same night, two men robbed an Exxon gas station in New Haven, one wearing a stocking mask and the other wearing a bandanna and carrying a sawed-off shotgun. At the Exxon station, the robbers ordered the night manager, John Cooke, to empty the cash register and open the safe. When Cooke closed the cash register in defiance of the robbers' orders, the robber carrying the shotgun poked the gun in Cooke's face, cutting his upper lip. The robbers also threatened to shoot Cooke if he did not open the safe. After Cooke again refused to open the safe, the two robbers fled with the cash from the register and some personal belongings and cash obtained from Cooke and two bystanders. Immediately thereafter, an unidentified customer handed Cooke a slip of paper on which he had written the license plate number of the robbers' car. Within a few minutes after the robbers fled the Exxon station, a similar robbery attempt occurred at a convenience store a block away.

The police traced the license plate number of the car to Louise Mabry, who had loaned the car to a friend, James Owens. After the robberies, Owens attempted to return the car to Mabry, but when he left

---

1. 28 U.S.C. § 2254(d) "requires federal courts in habeas proceedings to accord a presumption of correctness to state-court findings of fact." *Sumner v. Mata*, 455 U.S. 591, 592, 102 S.Ct. 1303, 1304, 71 L.Ed.2d 480 (1982) (Per Curiam). The petitioner concedes that he does not challenge the Appellate Court's "historical" factual findings, challenging instead the Appellate Court's legal conclusion that due process concerns are not raised by the facts of this case. *See* Petitioner's Mem. in Support of Summary Judgment at 8. While the legal determination made by the Appellate Court is a mixed question of law and fact that is not subject to § 2254(d) deference, "the questions of fact that underlie this ultimate conclusion *are* governed by the statutory presumption...." *See Sumner*, 455 U.S. at 597, 102 S.Ct. at 1307. This includes factual inferences drawn from the facts. *See Matusiak v. Kelly*, 786 F.2d 536, 543 (2d Cir.), *cert. dismissed*, 479 U.S. 805, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986). Therefore, the court adopts the purely factual findings of the Appellate Court as reported in its published opinion.

his apartment to return the car, he discovered police around the car. Immediately thereafter, Owens told Mabry to report the car as having been stolen, and she complied. The New Haven police brought Mabry to the car, and then took her to the police station. While at the police station, Owens called her twice, and both conversations were taped by the police with the permission of Mabry. During these conversations, Owens repeatedly denied having participated in the robberies that evening, and fabricated an elaborate story about how two persons borrowed Mabry's car from him to commit the robberies in question. Owens refused Mabry's repeated requests to come to the police station and explain to the police what happened that evening, swearing on his mother and on the grave of his child that he did not participate in the robberies.

On July 29, 1985, the New Haven police arrested James Owens in connection with the three robberies. He thereafter gave a statement to the police admitting his full participation in the robberies and implicating the petitioner and Melvin Daniels as the other participants. At trial, the prosecution called several witnesses, including Owens, Mabry and John Cooke, the Exxon night manager. Two events at trial, challenged in the state court appeal of this action, provide the grounds for the present petition.

First, the petitioner challenges an in-court identification of him by Cooke. At trial, Cooke testified briefly about the robbery at the Exxon station. Upon the completion of his testimony, the court recessed and Cooke approached the state's attorney, informing him that he recognized the petitioner as the individual who struck him with the shotgun, even though admittedly on the night of the robberies, the petitioner wore a bandanna over his face covering all but his eyes. After the recess, Cooke was recalled, and the state's attorney made an offer of proof, out of the presence of the jury. The trial court found the offer to be sufficiently reliable, and allowed Cooke to identify the petitioner in front of the jury. In his present petition, the petitioner challenges the constitutionality and reliability of the in-court identification.

The petitioner's second ground for his petition is the refusal of the trial court to admit into evidence the taped conversations between Owens and Mabry and to allow the defense to play the tapes to the jury. The petitioner argues that the refusal to admit the tapes into evidence deprived him of his Sixth and Fourteenth Amendment rights to confront a witness against him and to present a defense.

After trial, petitioner and his codefendant, Melvin Daniels, were convicted of two counts of robbery in the first degree, in violation of Conn.Gen.Stat. § 53a–134(a)(4), and one count of criminal attempt to commit robbery in the first degree, in violation of Conn.Gen.Stat. § 53a–134(a)(2) and 53a–49. The judgment of conviction was affirmed by the Connecticut Appellate Court. *State v. Chapman,* 16 Conn.App. 38, 546 A.2d 929 (1988), and an appeal from that decision was denied by the Connecticut Supreme Court. *State v. Chapman,* 209 Conn. 827, 552 A.2d 433 (1988). Both petitioner and Daniels were sentenced to a term of fifty years, suspended after thirty-nine years, with five years probation, and are currently incarcerated at the Connecticut Correctional Institute in Somers, Connecticut.

DISCUSSION

As stated above, the petitioner makes two constitutional challenges to his trial and subsequent conviction. First, the petitioner asserts that his Fourteenth Amendment right to due process was violated by the admission of John Cooke's in-court identification of him. Second, the petitioner claims that his Sixth and Fourteenth Amendment rights to confront adverse witnesses and to present a defense were violated by the court's refusal to allow his trial counsel to play the tape recordings of the two Mabry–Owens conversations to the jury. For the following reasons, the court finds that the petitioner's claims do not rise to the level of deprivations of constitutional rights, and therefore are insufficient to

mandate the issuance of a writ of habeas corpus.

### I. In–Court Identification

■ The petitioner first challenges the in-court identification of him by Cooke, arguing that the identification of the petitioner at trial was totally unreliable and suggestive. In support of this argument, the petitioner relies upon the fact that, at trial, Cooke testified that the petitioner wore a bandanna at the time of the robbery, and that, prior to the trial, Cooke was told by an employee of the State's Attorney's office that one of the robbers had turned state's evidence against the other two robbers. The petitioner argues that these facts establish that the in-court identification by Cooke was so unreliable as to violate his due process rights.

■ The United States Supreme Court has acknowledged that identifications of persons suspected of criminal activity that are tainted by the suggestive actions of investigating officers may well rise to the level of constitutional violations. *See Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *accord, Sims v. Sullivan*, 867 F.2d 142 (2d Cir.1989). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). It is the likelihood of misidentification that gives rise to a due process violation. *Id.*

However, the Supreme Court has fallen short of holding that admittedly suggestive identifications of suspects are *per se* unconstitutional. *See Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); *Simmons v. United States*, 390 U.S. 377, 383–384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Manson v. Brathwaite*, 432 U.S. 98, 104, 111, 97 S.Ct. 2243, 2248, 2251, 53 L.Ed.2d 140 (1977). Rather, consistent with the notion of fairness inherent in the Due Process Clause of the Fourteenth Amendment, the Supreme Court has adopted a "totality of the circumstances" standard for determining whether an identification of a suspect by a witness is so tainted by suggestive conduct and so facially unreliable as to deprive an accused individual of his Fourteenth Amendment rights.[2] *Manson*, 432 U.S. at 114, 97 S.Ct. at 2253. Holding in *Manson* that "reliability is the linchpin in determining the admissibility of identification testimony ...[,]" the Supreme Court outlined the test courts must apply when attempting to determine whether or not pretrial identification procedures are sufficiently reliable, under the circumstances particular to each case, to comport with Fourteenth Amendment notions of fundamental fairness despite the presence of impermissibly suggestive conduct by the investigating officers.[3]

■ In sum, when challenging an in-court identification by a witness on the ground that the identification violated one's due process rights, a habeas petitioner must show that the procedure followed in obtaining the identification was impermissibly suggestive. *See Jarrett v. Headley*, 802 F.2d 34, 42 (2d Cir.1986). If the petitioner shows that the process was impermissibly suggestive, then the prosecutor must show that the in-court identification is

---

2. The court acknowledges that the present case differs somewhat from the Supreme Court and Court of Appeals cases upon which it relies insofar as this case does not involve an identification of the petitioner prior to trial, either in the form of a show-up, a lineup or a photo array. Nevertheless, the Supreme Court has held that the "totality of the circumstances" test applies to both in-court and out-of-court identifications. *See Manson*, 432 U.S. at 106, 107, n. 9, 97 S.Ct. at 2249, n. 9.

3. In *Manson*, the Court wrote:

The factors to be considered ... include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself. *Manson*, 432 U.S. at 114, 97 S.Ct. at 2253, citing *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

reliable despite the suggestive procedures. *Id.*, citing *Manson,* 432 U.S. at 114, 97 S.Ct. at 2253. However, if the petitioner does not meet the threshold requirement of showing that the in-court identification was tainted by impermissible suggestiveness, then "independent reliability [of the in-court identification] is not a constitutionally required condition of admissibility ... and the reliability of the identification is simply a question for the jury." *Jarrett,* 802 F.2d at 42 (citations omitted); *United States v. Jacobowitz,* 877 F.2d 162, 168 (2d Cir.), *cert. denied,* 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989).[4]

■ In this case, the petitioner has failed to establish that the in-court identification of him by Cooke was tainted by impermissibly suggestive conduct of the investigating officers, the prosecutor or their agents. The petitioner does not dispute that the first time Cooke saw petitioner after the robbery was in the courtroom during Cooke's testimony. Although Cooke reviewed photographs shortly after the robbery, the record establishes that he never saw a photograph of the petitioner or his codefendant, nor was he asked to view suspects in a lineup or a show-up. During the trial all of the witnesses were sequestered, and there is no evidence which would suggest that Cooke communicated with any other witnesses prior to his in-court identification. While it is true that merely allowing a witness to view a criminal defendant in court at counsel table may very well amount to a show-up, *see United States v. Archibald,* 734 F.2d 938, 941 (2d Cir.1984), it is insufficient for petitioner to prevail upon his constitutional claims based solely upon his establishment of the fact that the in-court identification was the result of a show-up. *Id.; United States v. Brewer,* 768 F.Supp. 104, 107, n. 2 (S.D.N.Y.1991).

In short, the petitioner has not established that the spontaneous in-court identification by Cooke was tainted by impermissibly suggestive conduct on the part of the police or the prosecutor, or by an otherwise impermissibly suggestive procedure.

The only fact which would even remotely suggest that Cooke's testimony was somehow improperly influenced is Cooke's admission that an agent of the New Haven police or the State's Attorney's office told him shortly before the trial that one of the suspects had turned states evidence, and would be testifying against the petitioner and his codefendant. However, Cooke identified only the petitioner as one of the robbers; his codefendant was also sitting at counsel table but was not identified by Cooke. The petitioner has not argued that Cooke's spontaneous, in-court identification of him was the product of a bad faith effort on the part of the prosecution to produce a show-up before the jury or otherwise influence Cooke's testimony. *See United States v. Kaylor,* 491 F.2d 1127, 1132 (2d Cir.1973), *rev'd on other grounds sub nom., United States v. Hopkins,* 418 U.S. 909, 94 S.Ct. 3201, 41 L.Ed.2d 1155 (1974). Indeed, it was Cooke who approached the state's attorney, after being dismissed as a witness, and told the prosecutor that he could positively identify the petitioner as the individual who struck him with the shotgun during the robbery of the Exxon station. Having found that the petitioner has failed to establish that the in-court identification was impermissibly suggestive, the court does not reach the issue of whether the identification would satisfy the *Biggers* factors. *See Jarrett,* 802 F.2d at 42; *Archibald,* 734 F.2d at 941. The admissibility of the in-court identification was within the discretion of the trial judge, and the weight of the identification was an

---

**4.** In its written opinion, the Connecticut Court of Appeals held that the factors outlined in *Biggers* and *Manson* are inapplicable to purely in-court identifications that are untainted by out-of-court procedures, relying upon a line of Connecticut state court decisions. *See Chapman,* 16 Conn.App. at 41–43, 546 A.2d 929. However, in light of the above discussion of the Second Circuit decisions in *Jarrett* and *Jacobowitz,* the Connecticut Appellate Court's reasoning

does not comport with current Second Circuit law, and therefore is in error; the *Biggers* factors apply to purely in-court identifications if an accused is able to make a threshold showing that the identification resulted from an impermissibly suggestive procedure. However, this error does not, for the reasons that follow, alter the result reached in the Connecticut Court of Appeals.

issue to be determined by the jury. *Jarrett*, 802 F.2d at 42; *Foster*, 394 U.S. at 442, n. 2, 89 S.Ct. at 1128, n. 2.

## II. Inadmissibility of Tape Recording

■ The petitioner's other claim for relief is the assertion that the trial court's refusal to admit into evidence the tape recording of James Owens denying his participation in the robberies on the night of the crimes deprived him of his Sixth and Fourteenth Amendment rights to confront his accusers and present a defense. The court writes briefly in dismissing this claim.

■ It is axiomatic that inherent in the right of an accused to due process is the right to defend against a state's accusations and to confront and cross-examine adverse witnesses. *See Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). In cross-examining James Owens, counsel for the petitioner meticulously and thoroughly attacked Owens's credibility. Owens admitted that he would lie to the police, and to anyone else for that matter, whenever lying suited his interests. With respect to the conversations he had with Louise Mabry on the night of the robberies, Owens admitted that the elaborate story he told her about the robberies was completely untrue, and that he also lied to a police officer during the course of the conversations regarding his knowledge of the robberies. It is difficult for the court to imagine a more thorough and damaging cross-examination than the one conducted by defense counsel at trial in this case.

In light of the thorough cross-examination of Owens at trial, the court does not agree with the petitioner that the trial court's refusal to admit into evidence the tape recording of the Owens–Mabry conversations deprived him of his rights to confront his accusers and present a defense. Through cross-examination, virtually every statement made by Owens during the course of the taped conversations was repeated in open court and Owens admitted that all of the essential statements were lies. Owens admitted to the untruth of nearly every prior inconsistent statement with which he was confronted at trial. Simply stated, it is incredible for petitioner to argue that the trial court should have admitted the tape recording, as a matter of Sixth Amendment jurisprudence, so the jury could appreciate just how accomplished a liar Owens was; the cross-examination of Owens exhaustively examined all credibility issues raised by the numerous prior inconsistent statements made by Owens and established him as a chronic liar. Having found that the refusal to admit the tape recordings does not rise to the level of a deprivation of a constitutional right, the court need not address the question of whether the tape was admissible as a matter of state evidentiary law.

## CONCLUSION

For the foregoing reasons, the petitioner's amended petition for a writ of habeas corpus (document no. 11) and motion for summary judgment (document no. 18) are DENIED.

Any objections to this report and recommendation must be filed with the Clerk of Courts in accordance with 28 U.S.C. § 636, Rule 72 of the Federal Rules of Civil Procedure and Rule 2 of the Local Rules for United States Magistrate Judges.

Dated at Hartford, Connecticut, this 30th day of January, 1992.