THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SIMON GREEN, Defendant-Appellant.

Third District   No. 3—88—0794

Opinion filed June 12, 1990.

Janet L. Gandy, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Edward Burmila, State's Attorney, of Joliet (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Defendant Simon Green and codefendant Ricky Gordon were charged by complaint with armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2(a)). The two were tried separately, with Green being tried first. Following a jury trial, Green was convicted of the offense. During two hearings following the conviction, the defendant argued that he should be granted a new trial because of certain newly discovered evidence. The trial court denied the motion and sentenced the defendant to a 20-year prison term. The defendant appeals.

At trial Gina Staehley, an owner of the Ken Woody Sports store, testified that at approximately 12:15 p.m. on June 6, 1988, an individual later identified as Ricky Gordon came into the store, inquired about some merchandise and left, indicating that he would return later. At about 12:35 p.m. Gordon returned and selected a pair of athletic shoes to purchase. Instead of paying for them, however, he drew a gun and ordered Staehley to put the shoes and all the money from the cash register into a plastic bag. Gordon then exited the store, walked past the next door Sunbaum Schwinn store and got in the passenger side of an automobile parked behind the Schwinn store.

David Lesniewcz and Tim Beno, employees of the Schwinn store, testified that at approximately 12:45 p.m. on June 6, 1988, Staehley entered their store and told them that she had just been robbed. The two men ran out the back door of the store and saw a man get into the passenger side of a green Cordoba automobile.

Staehley was able to provide police with a fairly detailed description of the robber, while Beno was able to provide the police with a fairly detailed description of the driver of the automobile. Lesniewicz was unable to provide specific identification regarding either of the suspects but he did give the police a general description of the passenger and the number of the license plate.

Robin Jones, who lived across the hall from Gordon, testified that she saw Gordon and the defendant together at Gordon's apartment between 1 and 1:15 p.m. on the day of the robbery. Jones did not know whether the two arrived together. Jones further testified that Gordon's automobile was outside the apartment building at that time.

Sergeant Hafner of the Joliet police department testified that he was able to trace the license plate number provided by Lesniewicz to a car owned by Gordon. The police went to Gordon's apartment at 1:15 p.m. on the day of the robbery and found the car in front of Gordon's apartment complex. A new pair of athletic shoes, as well as a shirt later identified by Staehley as being the one worn by the robber, were found in the apartment.

Beno and Staehley were able to identify Gordon as the passenger in the automobile from a police photographic lineup held nearly one month after the robbery. During the same photographic lineup, Beno also identified the defendant as the driver of the automobile.

The defendant was found guilty of armed robbery. During two hearings following the conviction, defense counsel argued that the defendant should be granted a new trial because of certain newly discovered evidence. Counsel explained that after Beno had testified, the defendant had informed him that his photograph had been in a "Crime Stoppers" article in the Joliet Herald News. Counsel was not able to confirm this until shortly before closing arguments. During Gordon's trial it was established that Beno had seen the "Crime Stoppers" article and had discussed it with other witnesses before he was shown the lineup from which he identified the defendant as the driver of the automobile. In fact, the same photograph that appeared in the paper was the same photograph Beno picked out during the lineup. In Gordon's trial, Beno's identification of Gordon was suppressed because of the impermissibly suggestive lineup.

The prosecutor argued that the motion for a new trial should be

denied because defense counsel became aware of the "Crime Stoppers" article prior to the close of the defendant's trial and might have had a tactical reason for not pursuing the matter. The trial judge denied the motion without comment. The defendant raises two questions for our consideration.

Initially the defendant contends that the trial court erred in not granting the defense motion for a new trial based upon the newly discovered evidence that the State's only identification witness had identified the defendant in an impermissibly suggestive lineup.

■ The party seeking a new trial based upon newly discovered evidence "must establish that the newly discovered evidence would have been likely to produce a different result in the trial." (*People v. Molstad* (1984), 101 Ill. 2d 128, 135, 461 N.E.2d 398.) A trial court's decision to deny a motion for a new trial will not be overturned absent an abuse of discretion. *People v. Peters* (1986), 144 Ill. App. 3d 310, 320, 494 N.E.2d 853.

■ We find that the trial court did not abuse its discretion in denying the motion. The State initially contends that the evidence was not newly discovered. We agree with the defendant that the evidence was newly discovered evidence. While defense counsel clearly became aware of the "Crime Stoppers" article during the defendant's trial, it was not discovered until after the trial that Beno had seen the article. We do not agree, however, that the evidence would have produced a different result at trial.

■ ■ Assuming that the photographic identification was impermissibly suggestive, the State may nevertheless overcome that obstacle, by a clear and convincing showing, based on the totality of the surrounding circumstances, that " 'the witness is identifying the defendant solely on the basis of his memory of events at the time of the crime.' " (*People v. McTush* (1980), 81 Ill. 2d 513, 520, 410 N.E.2d 861, quoting *Manson v. Brathwaite* (1977), 432 U.S. 98, 122, 53 L. Ed. 2d 140, 159, 97 S. Ct. 2243, 2257 (Marshall, J., dissenting).) In *Manson*, the Court stated:

> "We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony ***. The factors to be considered are set out in *Biggers*. 409 U.S., at 199-200, 34 L. Ed. 2d at 401, 93 S. Ct. 375. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed

the corrupting effect of the suggestive identification itself." 432 U.S. at 114, 53 L. Ed. 2d at 154, 97 S. Ct. at 2253.

Applying these factors to the case at bar, it is apparent that:

1. At approximately 12:45 p.m. on a clear, sunny day witness Beno observed the defendant from a distance of 10 to 15 feet for a period of one to two minutes. Beno described the defendant as "sweaty."

2. Beno had just been advised that the store next door had been robbed. He and the other two employees went to the back of the store to see if they could observe the robber. It certainly can be inferred that he had a high degree of attention at that time, i.e., he wasn't a passive observer but rather went out to see what was going on.

3. Beno's description to the police shortly after the incident was of a heavyset black male, approximately 30 to 40 years of age, with a bushy afro haircut, small beard and mustache.

The presentence report indicates that the defendant is a 5-foot 9-inch, 260-pound black male in his late 30's. The photograph of the defendant which was introduced at trial shows the defendant to have a small beard and mustache. Beno testified that other than having longer hair, the defendant appeared the same in the photograph as he did the day of the robbery.

4. Beno never wavered in his identification of the defendant as the driver, either at the pretrial photo lineup or at the in-court identification of the defendant.

5. The photo lineup took place approximately one month after the robbery. The in-court identification took place in mid-October 1988, four months after the robbery.

6. It is true that the photo Beno saw in the article was identical to the photo he picked out of the police lineup. However, when he saw the photo, he immediately recognized the defendant as the driver of the automobile on June 6, 1988.

■ Balancing the first five against the sixth, we are of the opinion that an independent basis existed for Beno's identifications of the defendant. Accordingly, evidence of these would have been admitted at trial even if the identifications were tainted by Beno's viewing of the "Crime Stoppers" article.

The defendant's second issue contends that the defendant was denied his right to effective assistance of counsel. The defendant maintains that his counsel knew or should have known during the trial that the identification by Beno was suppressible.

■ The standard for determining whether a defendant has re-

ceived effective assistance of counsel at trial has two components: deficiency and prejudice. The defendant must first prove that his counsel made an error so serious that he was not functioning as the "counsel" guaranteed the defendant by the sixth amendment to the United States Constitution. Second, the defendant must prove that there is a "reasonable probability that, but for counsel's unprofessional errors, the result *** would have been different." *Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.

■ The defendant has failed to persuade us as to either of these points. The issue of counsel's competency is always based on a totality of the counsel's conduct. (*People v. Mitchell* (1984), 105 Ill. 2d 1, 15, 473 N.E.2d 1270.) Our review of the record fails to support such a finding.

Second, we are of the opinion that even if the defense counsel had discovered that Beno had seen the "Crime Stoppers" article, an independent basis existed for his identifications such that a motion to suppress would have failed.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.