**UNITED STATES of America ex rel. Simon GREEN, Petitioner,**

v.

**Howard PETERS, et al., Respondents.**

No. 92 C 295.

United States District Court, N.D. Illinois, E.D.

Sept. 17, 1993.

Locke E. Bowman III, MacArthur Justice Center, for petitioner.

Michael M. Glick, Atty. General's Office, for respondents.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Simon Green ("Green") originally filed a self-prepared 28 U.S.C. § 2254 ("Section

2254") petition seeking a writ of habeas corpus because of his allegedly unconstitutional 1988 conviction on a state armed robbery charge (Green is now serving a 20–year sentence for that offense). Because this Court found that Green's petition survived the required initial surface evaluation—that is, it was non-"frivolous" in the legal sense defined by *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) and most recently refined in *Denton v. Hernandez,* — U.S. ——, —— – ——, 112 S.Ct. 1728, 1733–34, 118 L.Ed.2d 340 (1992):

> 1. Leave was granted to Green to file in forma pauperis.
>
> 2. Locke Bowman, Esq. ("Bowman") was appointed to act as Green's counsel on a pro bono publico basis.
>
> 3. All of the state respondents were ordered to answer the petition.

After respondents had filed an Answer and accompanying Memorandum of Law that (1) challenged several of the grounds advanced by Green in his pro se petition and (2) asked that the writ be denied, Bowman submitted an Amended Petition on Green's behalf, coupled with a motion for evidentiary hearing. After that motion had been fully briefed, this Court's short October 21, 1992 memorandum opinion and order granted the motion, and the required evidentiary hearing has been held. Each party has now tendered post-hearing submissions, and the case is ripe for decision on the merits.

Because Green's claimed constitutional deprivation is grounded on the Sixth Amendment right to counsel,[1] the familiar two-pronged standard established by *Strickland v. Washington,* 466 U.S. 668, 687–94, 104 S.Ct. 2052, 2064–68, 80 L.Ed.2d 674 (1984) has said that he must demonstrate both (1) that his representation at sentencing fell below an objective standard of reasonableness and (2) that a reasonable probability exists that but for his attorney's unprofessional representation the result of the proceeding would have been different. Most recently

the Supreme Court has framed the second ("prejudice") branch of that inquiry in a somewhat narrower fashion (*Lockhart v. Fretwell,* — U.S. ——, ——, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993)):

> It focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.

En route to that restatement the Court said (*id.,* at —— – ——, 113 S.Ct. at 842–43 (footnote omitted)):

> Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.

And see our Court of Appeals' current decision in *Durrive v. United States,* 4 F.3d 548, 550–51 (7th Cir.1993), which characterizes *Lockhart* as "reject[ing] the equation between causation [in the but-for sense] and prejudice."

In this instance Green's claim focuses on the assertion that his trial counsel Harry Irby ("Irby") did not investigate the circumstances of a key eyewitness' identification of Green as the driver of the getaway car in an armed robbery. As a result of that failure, Irby neither moved to suppress that photospread identification nor—assuming that a motion to suppress would have been made and denied—presented the circumstances of that identification to the jury so as to raise questions as to the witness' credibility.

■ Although *Strickland* lists the two components of the inquiry in the order stated two paragraphs earlier in this opinion,

---

**1.** As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the Sixth Amendment's underlying Bill of Rights provision (which of course imposes limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guaranties).

*Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069–70, also teaches that they need not be dealt with in that sequence—indeed it is not essential to analyze both components, because a defendant's failure to satisfy either of them is fatal to his claim (*United States v. Slaughter,* 900 F.2d 1119, 1124 (7th Cir. 1990)). Indeed *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069, says expressly:

> If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

It is wise to heed that lesson in this case. Although it is at least arguable that Irby's failure to pursue all the available issues on Green's behalf did not fall below the constitutional threshold,[2] an analysis of the second prong makes it unnecessary to pursue that first avenue of approach in any event. Hence this opinion will turn directly to the prejudice or absence of prejudice to Green from the asserted taint in the identification procedures.

In that respect Green's appointed counsel Bowman has done an admirable job of constructing a multi-step argument. First Bowman challenges the procedures that were used by Joliet Police Department Detective Dan Hulbert (1) in causing a photograph of Green to be published in a newspaper article (the "Crime Stoppers" column, which referred to Green as wanted on an arrest warrant for armed robbery[3]), where it was seen by key eyewitness Timothy Beno ("Beno"), and then (2) in using the identical photo in a photospread shown to Beno something less than two weeks later. Bowman also attacks Detective Hulbert's use of a photo array rather than an in-person lineup as part of the assertedly suggestive identification procedures, but that argument is really unpersuasive.[4] And the final aspect of counsel's argument on Green's behalf is that the asserted taint in the earlier identification procedure

---

2. Irby was an assistant public defender who was appointed to represent Green at trial. Even though the Office of the State Appellate Defender—which might technically be characterized as part of the same "law firm"—handled Green's direct appeal from his conviction, the appointed lawyers at the appellate level showed no diffidence about raising and arguing the constitutional issue of the claimed denial of Green's right to the effective assistance of counsel because of the same deficiencies in performance that Bowman argues here. But that contention was rejected by the Illinois Appellate Court in *People v. Green,* 198 Ill.App.3d 525, 530, 144 Ill.Dec. 689, 692, 555 N.E.2d 1208, 1211 (3d Dist.1990).

3. In the article's headline that appeared immediately between Green's photograph and the text naming and describing him, Green was accurately described as a "robbery suspect."

4. Although Green was just 5′9″ tall, he weighed somewhere in the range of 230 to 260 lbs. Hulbert testified plausibly that although he went to the police station to see about putting together an in-person lineup after Green had been arrested, he did not have available to him a group of black males whose physical characteristics were close enough to Green's to enable Hulbert to do so. Instead he presented Beno with five mugshots that had no elements of suggestiveness in terms of the disparity among the depicted subjects: All five of them had similar dark skin colors, reasonably similar hairstyles, similar types of facial hair (beard and mustache) and so on. None of the photographs depicted anyone in a bushy Afro hairstyle (which had been part of Beno's post-robbery description to the police), so the fact that Green's hair in the four-year-old photograph was very close-cropped can scarcely be characterized as improperly suggestive. As for counsel's argument that Hulbert's use of the same photo as that depicted in the Crime Stoppers article was improper in light of the availability to Hulbert of the very recent photograph of Green taken at the time of his arrest for the current robbery, a comparison of those two photos shows no material difference (if anything, the newer one might be thought to be more suggestive of a longer hairstyle, for it showed Green with his hair in corn rows—which might have been the result of taming an Afro—while the older photograph depicted much shorter hair). And the fact that the photos showed only the subjects' upper chests and heads was appropriate given the fact that the photospread related to the driver of the getaway car, whom Beno had seen only in a seated position in the car. Indeed, if Hulbert *had* assembled an in-person lineup, with Green's bulky build presenting a sharp contrast with the other available black males, no doubt *that* would have been met with a post-conviction claim of impermissible suggestiveness—and the *state* would then have been compelled to respond by emphasizing the limited nature of Beno's observation of the driver's body. Detective Hulbert's decision cannot be attacked as unreasonable.

made *any* later identification—specifically Beno's in-court identification of Green at trial—equally tainted because the identification well had been irrevocably poisoned.

■ On that score Green must again overcome a double hurdle, this time the one defined in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and further refined in *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977):

> We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony for both pre- and post-*Stovall* confrontations. The factors to be considered are set out in *Biggers.* 409 U.S., at 199–200 [93 S.Ct., at 382]. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

Thus even if a photographic identification is impermissibly suggestive, the identification remains admissible if the totality of the just-described circumstances demonstrates its reliability.

In that respect it is worth quoting at length what the Illinois Appellate Court said on Green's appeal as to whether a new trial should be granted based on the identical factor that is relied on here: the claim that an impermissibly suggestive photospread shown to Beno tainted both of his identifications, first in singling Green out of that photospread and then in pointing Green out in court during the trial. Because the Appellate Court treated that as newly-discovered evidence, and because the Illinois standard for that purpose essentially matches (or is perhaps more generous than) the second (prejudice) branch of the *Strickland–Lockhart* analysis,[5] the Appellate Court's inquiry was really quite parallel to that now before this Court. Here is the relevant part of that opinion (198 Ill.App.3d at 528–29, 144 Ill.Dec. at 691–92, 555 N.E.2d at 1210–11):

> Assuming that the photographic identification was impermissibly suggestive, the State may nevertheless overcome that obstacle, by a clear and convincing showing, based on the totality of the surrounding circumstances, that "the witness is identifying the defendant solely on the basis of his memory of events at the time of the crime." *People v. McTush* (1980), 81 Ill.2d 513, 520, 43 Ill.Dec. 728, 410 N.E.2d 861 *quoting Manson v. Brathwaite* (1977), 432 U.S. 98, 122, 97 S.Ct. 2243, 2257, 53 L.Ed.2d 140 (Marshall, J., dissenting). In *Manson* the Court stated:
>
> > [quoting the same language that this opinion has already quoted from that case]
>
> Applying these factors to the case at bar, it is apparent that:
>
> 1. At approximately 12:45 p.m. on a clear sunny day witness Beno observed the defendant from a distance of 10–15 feet for a period of one-two minutes. Beno described the defendant as "sweaty."
>
> 2. Beno had just been advised that the store next door had been robbed. He and the other two employees went to the back of the store to see if they could observe the robber. It certainly can be inferred that he had a high degree of attention at that time, *i.e.* he wasn't a passive observer but rather went out to see what was going on.
>
> 3. Beno's description to the police shortly after the incident was of a heavy

---

**5.** As the Appellate Court stated the Illinois rule (198 Ill.App.3d at 528, 144 Ill.Dec. at 691, 555 N.E.2d at 1210):

> The party seeking a new trial based upon newly discovered evidence "must establish that the newly discovered evidence would have been likely to produce a different result in the trial."

As suggested earlier in this opinion, the *Strickland* test for prejudice sounds much the same (466 U.S. at 694, 104 S.Ct. at 2068):

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

And as this opinion has also reflected, the reformulation of that test in *Lockhart* would appear to present an even higher hurdle than the Illinois "likely to produce a different result" standard.

set black male, approximately 30–40 years of age, with a bushy afro haircut, small beard and mustache.

The pre-sentence report indicates that the defendant is a 5'9", 260 pound black male in his late 30's. The photograph of the defendant which was introduced at trial shows the defendant to have a small beard and mustache. Beno testified that other than having longer hair, the defendant appeared the same in the photograph as he did the day of the robbery.

4. Beno never wavered in his identification of the defendant as the driver, either at the pre-trial photo line-up or at the in-court identification of the defendant.

5. The photo line-up took place approximately one month after the robbery. The in-court identification took place in mid-October, 1988, four months after the robbery.

6. It is true that the photo Beno saw in the article was identical to the photo he picked out of the police line-up. However, when he saw the photo, he immediately recognized the defendant as the driver of the automobile on June 6, 1988.

Balancing the first five against the sixth, we are of the opinion that an independent basis existed for Beno's identifications of the defendant. Accordingly, evidence of these would have been admitted at trial even if the identifications were tainted by Beno's viewing of the Crime Stoppers article.

■ To the extent that the Appellate Court's determinations are factual in nature, they bind this Court under 28 U.S.C. § 2254(d) and *Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982) (per curiam). *Sumner* too involved a question whether a pretrial photographic identification procedure was impermissibly suggestive, and the court said this (footnotes omitted):

We agree with the Court of Appeals that the ultimate question as to the constitutionality of the pretrial identification procedures used in this case is a mixed question of law and fact that is not governed by § 2254(d). In deciding this question, the federal court may give different weight to the facts as found by the state court and may reach a different conclusion in light of the legal standard. But the questions of fact that underlie this ultimate conclusion *are* governed by the statutory presumption as our earlier opinion made clear. Thus, whether the witnesses in this case had an opportunity to observe the crime or were too distracted; whether the witnesses gave a detailed, accurate description; and whether the witnesses were under pressure from prison officials or others are all questions of fact as to which the statutory presumption applies.

■ On all of the numbered findings made by the Illinois Appellate Court, this Court concurs (it rejects the contention by Green that some of those "factual determination[s were] not fairly supported by the record," the potential exception specified in Section 2254(d)(8)). And to the extent that the Appellate Court was ruling on questions of law (determinations that are not binding on this Court as such—see, e.g., *Brown v. Allen*, 344 U.S. 443, 458, 73 S.Ct. 397, 407–08, 97 L.Ed. 469 (1953)), this Court independently agrees entirely with its analysis and conclusion.

Finally, this Court does not find that a presentation to the jury (1) of the Crime Stoppers article, (2) of the fact that Beno had seen it before he saw the photospread and (3) of the inclusion of that same photographs in the photospread establishes "a reasonable probability that ... the result of the proceeding would have been different" (*Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068)—let alone meeting what seems to be the more demanding showing of prejudice required by *Lockhart.*

In summary, Green certainly cannot complain about the excellent quality of the representation that he has received before *this* Court. But advocacy cannot supplant the need for proof, and on that score Green has failed to show prejudice, the second branch of the *Strickland–Lockhart* inquiry. This action is dismissed with prejudice.