**Troy Wayne RODGERS, Petitioner,**

v.

**Ron ANGELONE, Director,
Respondent.**

**No. Civ.A. 99–1309–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 12, 2000.

924

Troy Wayne Rodgers, Mitchells, VA, petitioner pro se.

Linwood Theodore Wells, Jr., Office of Attorney General, Criminal Litigation Section, Richmond, VA, for respondent.

## MEMORANDUM OPINION

ELLIS, District Judge.

This *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 raises several issues, including the questions, unresolved in this circuit, of whether (1) a timely filed notice of appeal, by itself, is a properly filed application for the purposes of § 2244(d)(2) when the required subsequent petition is never timely filed; and, (2) if not, under which circumstances may equitable tolling resurrect a petition that has not been timely filed under the statute.

### I.

Petitioner Troy Wayne Rodgers ("Rodgers") is attacking the validity of a final judgment of a bench trial in the Circuit Court of Spotsylvania County on April 9, 1997. The record reflects that Rodgers was charged with assault and battery of the two victims, Cornelia Frazer Lopez ("Lopez"), and her daughter, Julia Newell ("Newell") on June 1, 1996. He also was charged with breaking and entering and the subsequent malicious wounding of Lopez and Newell on September 14, 1996.

The evidence presented at trial included the testimony of both victims and the medical records from the victims' emergency room treatment. From the record, it appears that Newell and Rodgers had engaged in a volatile romantic relationship since March 1996. When not at odds with each other, the couple lived together in the house that Newell owned, which she shared with her two minor children and Lopez. Lopez lived in the separate apartment on the lower level, but had free access to the upper portion of the house.

Newell and Rodgers fought frequently, and on these occasions, Rodgers would sometimes move out, staying with a cousin, who lived on the same block.

Lopez testified that on June 1, 1996, she entered the kitchen and discovered Rodgers assaulting Newell. She intervened, and Rodgers turned on her, striking her with his fists. Lopez did not file charges against Rodgers at this time because Newell asked her not to do so. In September 1996, Newell and Rodgers again fought, and on this occasion, Rodgers moved out. Lopez testified that on September 14, 1996, she was awakened at about 5:00 in the morning by the sound of a disturbance upstairs and called 911. Newell's son came downstairs to Lopez's room and said, "Troy is killing Mommy." Lopez seized a lamp and went upstairs to Newell's bedroom, where she saw her daughter lying on the floor, bloody and unconscious. She testified that when Rodgers saw her, he came at her, and she attempted to defend herself with the lamp, but Rodgers overpowered her, threw her across the room, and then punched, hit, and kicked her, stating, "I'm going to kill you." On cross-examination, she stated that she hit Rodgers with the lamp before he hit her.

Newell testified reluctantly that she was assaulted and injured by Rodgers on September 14, 1996. She also testified that she and her mother had prepared a statement on September 29, 1996, which they typed, signed, and gave to the police. Newell explained that Lopez directed her to write the statement and told her what had occurred between Lopez and Rodgers, as she, Newell, had not been present during the entire episode. Newell then testified that at the time of the incident, Rodgers was not living in her house, owing to an earlier argument between them. And, she further testified that, at the time of the incident, she had not invited him back.

Newell further testified that on the morning of September 14, she was awakened in her bedroom by Rodgers, who told her he wanted to reconcile with her. This conversation escalated first into an argument, and then to violence with Rodgers striking Newell. Newell testified Rodgers hit her more than once, and pushed her to the floor as well. At this point, according to Newell, she was experiencing difficulty in breathing and her nose was bleeding, as Rodgers began choking her while they both struggled on the floor. Newell testified she then lost consciousness briefly, and when she awoke, she heard her children and mother yelling, and then ran out of the house.

From the record, it appears that Rodgers left the scene before the sheriff's deputies came, and a deputy testified that Newell and Lopez both were outside of the house when they arrived. The deputies proceeded to search for Rodgers, finding him ultimately in the back yard of a residence two houses away from Newell's. At first, Rodgers attempted to flee, but soon abandoned the attempt and surrendered to the police. Thereafter, the deputies escorted Newell and Lopez to the hospital, where they were treated for their injuries in the emergency room and released. Photographs of the victims' injuries were taken within a few hours of the incident and made a part of the trial record together with their medical records.

After hearing all the evidence, the trial court found Rodgers guilty of one count of malicious wounding of Lopez and one count of trespassing stemming from the September 14, 1996 incident, and two counts of assault and battery stemming from the June 1, 1996 incident. (Virginia Code §§ 18.2–51, 18.2–57 & 18.2–119). Thereafter, Rodgers was sentenced to a term of imprisonment totaling 10 years. His counsel appealed the conviction to the Court of Appeals of Virginia, alleging two grounds for relief: (1) that there was insufficient evidence to sustain a malicious wounding conviction, and (2) that the trial court erred in the weight and credibility it gave to the victims' testimony. The Court of Appeals rejected these arguments and affirmed Rodgers' conviction and sentence.

*See Rodgers v. Commonwealth of Virginia,* No. 1036–97–2 (Va.Ct.App. Sept. 24, 1997). Rodgers' petition for appeal to the Supreme Court of Virginia was denied summarily. *See Rodgers v. Commonwealth,* No. 980062 (Va. April 28, 1998) (unpublished opinion). Rodgers then filed a *pro se* petition for a writ of habeas corpus with the Circuit Court of Spotsylvania County, which was denied. *See Rodgers v. Director, Dep't of Corrections,* No. CL–98–332 (order entered Aug. 14, 1998). On or before September 14, 1998, Rodgers filed a timely Notice of Appeal in the trial court, although he thereafter failed to file the requisite petition for appeal in the Supreme Court of Virginia. *See* Va.Sup. Ct.R. 5:17.

In the instant petition, Rodgers seeks to explain this failure. Specifically, he alleges that immediately after submitting his notice of appeal, the correctional institution where he was housed went on twenty-four hour lockdown. Next, he was transferred to another institution and was therefore unable to file his petition for appeal in a timely manner. According to Rodgers, he wrote to the Clerk of the Supreme Court of Virginia, explaining the reason for the delay, but the Clerk informed him that no out-of-time petitions would be accepted.

On August 23, 1999, Rodgers filed the instant petition *pro se,* raising the same claims as those raised in his habeas petition before the Circuit Court of Spotsylvania County. Specifically, he alleges that:

1. The evidence was insufficient to support a conviction of malicious wounding;
2. The prosecution engaged in misconduct at trial;
3. The trial court erred in accepting perjured testimony of the victims; and,
4. A prosecution witness gave perjured trial testimony.

As evidence of the truth of his allegations of perjury, Rodgers has referenced two letters from Newell which were apparently mailed to the Court of Appeals of Virginia and the Supreme Court of Virginia. The first is dated December 2, 1997, and the second April 3, 1998. In these letters, Newell states that she has hired counsel to assist Rodgers with his appeal because she believes a great miscarriage of justice occurred. She states that she did not tell the truth "about several matters," and that "[A]ll the facts were either distorted, exaggerated, or falsified." She felt that her mother and the prosecutor forced her to testify. The prosecutor, she claims, threatened to put her in jail and take away her children if she did not testify. According to these letters, Rodgers had been living with Newell for the six months prior to September 14, 1996, but she had asked him to leave shortly before the September 14 incident because she was angry with him. In addition, her mother did not like Rodgers and often interfered in her relationship with him. She states in the December 2, 1997 letter that Rodgers did not break into the house on September 14; rather she allowed him to enter. She also denies that he tried to choke her, but says instead that her bronchitis made it difficult for her to breathe. Newell asserts that Rodgers "had no premeditated intention of harming anyone," and that she provoked him into the fight.[1] Additionally, in the April 3, 1998 letter, Newell accuses her mother of lying in court and states that her mother has severe personality disorders, psychosis, and manic depressive disorder. Rodgers' claims are based on the statements made in the two letters, neither of which is under oath and neither of

---

1. Newell continues,

I am to blame for a lot of what happened that night. I know deep within my heart that Troy W. Rodgers would not have harmed myself or my mother if he had not been provoked into doing so. He had no intention of harming either of us he only wanted to be with me. I feel great guilt for what has happened to Troy because I provoked the fight.

which was presented to the Supreme Court of Virginia on direct appeal.

After preliminary consideration of the instant petition pursuant to Rule 4 of the Rules Governing § 2254 Cases, the Court directed respondent to show cause why this writ should not issue. Respondent filed a Rule 5 Answer and Motion to Dismiss. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), the Court notified petitioner of the potentially dispositive nature of the motion and accorded him the opportunity to file responsive materials. Petitioner has done so and thus this matter is now ripe for adjudication.

## II.

Claims (1), (3), and (4) were decided on the merits by the Supreme Court of Virginia during Rodgers' direct appeal. These claims, therefore, have been exhausted and may be heard here on the merits pursuant to the standard set forth in 28 U.S.C. § 2254(d). Claim (2), however, was raised in Rodgers' petition before the Circuit Court of Spotsylvania County, but omitted in the direct appeal to the Supreme Court of Virginia. Claim (2), therefore, has not been exhausted as required by 28 U.S.C. § 2254(b)(1). And, because this claim was not raised on direct appeal, it would have been procedurally barred had it been raised on collateral review before the Supreme Court of Virginia. *See Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680 (1974) (holding that a habeas corpus petition may not be used as a substitute for direct appeal). Thus, claim (2) is reviewable here on the merits only if Rodgers can meet the cause and prejudice or actual innocence standard applicable to procedurally defaulted claims. *See Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986);

2. *See* U.S.Sup.Ct.R. 13(1) (petitions for review are timely filed within 90 days of the entry of judgment by a state court of last resort).

3. This one-year limitations period runs from the latest of:

*Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ There is, however, a threshold issue concerning whether all of Rodgers' claims are time barred by the one year statute of limitations incorporated in 28 U.S.C. § 2244. Rodgers was convicted on April 9, 1997, and his appeal was denied on April 28, 1998. Thus, his conviction became final on July 27, 1998, the last day he could have petitioned the Supreme Court of the United States for a writ of certiorari.[2] His habeas petition was denied by the trial court on August 14, 1998, and Rodgers filed a timely notice of appeal by September 14, 1998, but then never filed the requisite petition for appeal in the Supreme Court of Virginia. Rodgers then filed the instant petition on August 23, 1999. Thus, whether the instant petition is time barred depends on the question, unresolved in this circuit, whether the time for filing a federal habeas petition is tolled during a state's statutory three-month period between the filing of a notice of appeal and the deadline for the filing of the actual petition for appeal, where, as here, no petition for appeal is filed during that period.

## III.

A. *Statutory Tolling under 28 U.S.C. § 2244*

■ Following enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. 104–132, 110 Stat. 1214, 28 U.S.C. § 2244 was amended to provide for a one-year statute of limitations on the filing of a federal habeas corpus petition. Given the brevity of this limitations period, it is often crucial to know what time periods may be excluded from this period.[3] In this regard, Section

(A) [T]he date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review;
(B) [T]he date on which the impediment to filing an application created by State action

28 U.S.C. § 2244(d)(2) provides that "[t]he time during which a *properly filed application* for State post-conviction or other collateral review ... is pending shall not be counted toward any period of limitation under this subsection." (emphasis added). The key to the application of this provision is the meaning of the phrase "properly filed application." Yet, "[n]either [the] AEDPA nor its legislative history explains which state filings qualify as properly filed applications." *Villegas v. Johnson*, 184 F.3d 467, 470 (5th Cir.1999) (citing relevant legislative history). In these circumstances, courts have struggled with the task of construing the phrase. And, while no court has specifically addressed whether a notice of appeal, by itself, is a properly filed application when the required subsequent petition for appeal is never filed, it now appears that the emerging majority rule in this circuit and elsewhere is that whether an application is " 'properly filed' ... depends not on the petition's merits, but on whether the state's procedural filing requirements have been met." *Patterson v. Director, Virginia Dep't of Corrections*, 36 F.Supp.2d 317, 320 (E.D.Va. 1999).[4] This general rule, which is sensibly consistent with principles of comity, brings into play the panoply of a state's procedural requirements, such as the rules governing notice to respondent, time limits, place for filing and filing second or successive petitions. *See Villegas*, 184 F.3d at 469–70; *Lovasz v. Vaughn*, 134 F.3d 146, 147 (3d Cir.1998). It is also dispositive here as Virginia's appellate procedure rules provide the answer to the question whether a notice of appeal, without more, is a "properly filed petition."

■ The function of a notice of appeal is to act as a procedural aid to assist the lower court in preparing the record for the reviewing court. *See* Va.S.Ct.R. 5:13 (directing the clerk of the trial court to prepare the record for transmittal to the Supreme Court of Virginia "as soon as possible after the notice of appeal is filed"). Yet, Virginia's rules make clear that no proper application for appeal exists until the "petition for appeal" is timely filed. *See* Va.S.Ct.R. 5:17 ("In every case in which the appellate jurisdiction of this Court is invoked, a petition for appeal must be filed with the clerk of this Court."). Consistent with this, a petition is procedurally defaulted if a prisoner fails to file a timely appeal of the trial court's denial of habeas relief. *See Wise v. Williams*, 982 F.2d 142 (4th Cir.1992), *cert. denied*, 508 U.S. 964, 113 S.Ct. 2940, 124 L.Ed.2d 689 (1993). And, this holds

in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) [T]he date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;

(D) [T]he date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Rodgers does not allege circumstances under (B), (C), or (D).

4. The Fourth Circuit has yet to address the question of what is a "timely filed application" in a published opinion. In two unpublished opinions, however, the Fourth Circuit appears to be taking the majority view. *See, e.g., Mitchell v. Smith*, 194 F.3d 1305, 1999

WL 754029 (4th Cir. Sept.23, 1999) (table decision) (holding that the tolling provision of § 2244(d)(2) runs from the date the habeas petition is properly filed through the appeals process to the date the highest state court denies the petition); *McSheffrey v. Angelone*, 172 F.3d 863, 1999 WL 89403 (4th Cir. Feb.23, 1999) (table decision) ("A state application is properly filed if it complies with the state procedural requirements for successive collateral attacks on a conviction, such as timeliness and proper place of filing.").

A minority of courts have construed "properly filed" to toll the limitations period only during the pendency of successive petitions that have merit under state law. *See, e.g., Bennett v. Artuz*, 199 F.3d 116, 121 (2d cir. 1999); *Tinker v. Hanks*, 172 F.3d 990 (7th Cir.1999) (holding that an application for leave to file a successive petition is not a "properly filed application" under the statute).

true even though the Supreme Court of Virginia may grant extensions of time. *Id.* Thus, under Virginia's rules, an "application" is only "properly filed" on the date that the prisoner, within the time limit, submits his petition for appeal to prison officials to be mailed.[5] When that occurs, statutory tolling is effective back to the date of the filing of the notice of appeal.

In the instant case, if Rodgers had filed a timely petition for appeal, the time between the trial court's denial of the habeas petition and the Supreme Court of Virginia's denial of the petition for appeal would have been tolled because throughout the time, his collateral petition was "pending." Yet, because Rodgers never filed the required petition for appeal, his state petition ceased to be "pending" on the date of the trial court's decision. Thus, under 28 U.S.C. § 2244(d)(2), the instant petition is not timely filed. This is not the end of the inquiry, however, as there remains the question whether Rodgers is entitled to the benefit of equitable tolling.

B. *Equitable Tolling of a Habeas Petition*

Courts in this circuit and elsewhere in applying the AEDPA have concluded that the time limitation codified in § 2244(d) is analogous to a statute of limitations rather than to a jurisdictional bar.

*See Harris v. Hutchinson,* 209 F.3d 325, 328–29 (4th Cir.2000); *Brown v. Angelone,* 150 F.3d 370, 371–72 (4th Cir.1998).[6] Thus, in appropriate circumstances, the judicial doctrine of equitable tolling may be invoked by petitioners whose claims are time-barred by § 2244(d). *See Harris,* 209 F.3d at 329–330 ("As a general matter, principles of equitable tolling may, in the proper circumstances, apply to excuse a plaintiff's failure to comply with the strict requirements of a statute of limitations.").[7]

Equitable tolling was developed to overcome injustices that may occur under a strict application of a statute of limitations; it is "a discretionary doctrine that turns on the facts and circumstances of a particular case [and] equitable tolling does not lend itself to bright-line rules." *Id.* at 330 (quoting *Fisher v. Johnson,* 174 F.3d 710, 713 (5th Cir.1999)). In general, equitable tolling is available only under two circumstances: (1) where a plaintiff has been prevented from asserting his claims by egregiously wrongful conduct on the part of a defendant; or, (2) where extraordinary circumstances beyond a plaintiff's control made timely filing impossible. *Id.* (citing *Alvarez–Machain v. United States,* 107 F.3d 696, 700 (9th Cir. 1996)). In applying equitable tolling specifically to § 2244(d), however, the Fourth

5. For purposes of calculating the statute of limitations, a federal habeas petition is deemed filed as of the date petitioner delivered his pleading to prison officials to send to the court. *See Lewis v. Richmond City Police Dep't,* 947 F.2d 733 (4th Cir.1991); *see also Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

6. Other circuits have reached the same conclusion. *See, e.g., Davis v. Johnson,* 158 F.3d 806, 810 (5th Cir.1998); *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 617–18 (3d Cir.1998); *Miller v. Marr,* 141 F.3d 976, 978 (10th Cir.1998); *Calderon v. United States Dist. Court,* 128 F.3d 1283, 1288–89 (1997), *overruled on other grounds,* 163 F.3d 530 (9th Cir.1998) (en banc).

7. The Fourth Circuit's view of equitable tolling in this context is essentially consistent with the decisions of other circuit courts ad-

dressing this issue. *See Calderon v. United States Dist. Court,* 163 F.3d 530, 535 (9th Cir.1998) (en banc); *Davis,* 158 F.3d at 811; *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d at 618; *Miller v. Marr,* 141 F.3d at 978; *Calderon,* 128 F.3d at 1288–89; *see also Taliani v. Chrans,* 189 F.3d 597, 598 (7th Cir.1999) (concluding that "the judge-made doctrine of equitable tolling is available, in principle at least" although "it is unclear what room remains for importing the judge-made doctrine," given the express tolling provisions of the statute); *Sandvik v. United States,* 177 F.3d 1269, 1271–72 (11th Cir. 1999) (per curiam) (finding that § 2255 permits equitable tolling, relying on analyses of other circuits in cases construing § 2244); cf. *Libby v. Magnusson,* 177 F.3d 43, 48 n. 2 (1st Cir.1999) (reserving the question of whether equitable tolling might apply).

Circuit has cautioned that the doctrine "must be reserved for those *rare instances* where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Id.* (emphasis added). It follows that merely missing a deadline owing to counsel's misreading of the statute is not an occasion for the application of the doctrine. *See Id.*[8]

The current record is inadequate to determine whether Rodgers'[9] otherwise time-barred claims are rescued by equitable tolling.

Given this, it is appropriate to pass over this issue by assuming, *arguendo,* that Rodgers is entitled to the benefit of tolling and then proceed to consider whether, were this so, Rodgers' claims merit habeas relief. This record is too sparse to permit a confident conclusion concerning whether a strict application of the one-year limitations period would be unconscionable in light of Rodgers' circumstances during this period.

### IV.

 Because claim (2) was not raised on direct review to the Supreme Court of Virginia, it is, on settled principles, procedurally barred. Virginia considers a claim to be procedurally defaulted if the petitioner could have raised it on direct appeal but failed to do so. *See Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975). The Supreme Court of Virginia's finding of procedural default is entitled to a presumption of correctness, 28 U.S.C. § 2254(d); *Clanton v. Muncy,* 845 F.2d 1238, 1241 (4th Cir.1988), provided two foundational requirements are met. First, the state court must explicitly rely on the procedural ground to deny petitioner relief. *See Ylst v. Nunnemaker,* 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Harris v. Reed,* 489 U.S. 255, 259, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). Second, the state procedural rule furnished to default petitioner's claim must be an independent and adequate state ground for denying relief. *See Harris,* 489 U.S. at 260, 109 S.Ct. 1038; *Ford v. Georgia,* 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). When these two requirements have been met, federal courts may not review the barred claims absent a showing of cause and prejudice or a funda-

---

8. Other circuits have similarly construed narrowly what exceptional circumstances would trigger equitable tolling. *See, e.g., Taliani,* 189 F.3d at 598 (rejecting a lawyer's miscalculation of a limitations period as a valid basis for equitable tolling); *Sandvik,* 177 F.3d at 1272 (refusing to toll the limitations period where the prisoner's delay occurred because his lawyer allegedly mailed the petition by ordinary mail rather than some form of expedited delivery); *Fisher v. Johnson,* 174 F.3d 710, 714–15 (5th Cir.1999) ("Ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing."); *Miller v. Marr,* 141 F.3d at 978 (holding that equitable tolling did not apply where access to legal materials that would have given notice of the limitations period was delayed); *Gilbert v. Secretary of Health & Human Servs.,* 51 F.3d 254, 257 (Fed.Cir.1995) (concluding that a lawyer's mistake is not a valid basis for equitable tolling); *Barrow v. New Orleans S.S. Ass'n,* 932 F.2d 473, 478 (5th Cir.1991) (determining that equitable tolling did not apply where the delay in filing was the result of a plaintiff's unfamiliarity with the legal process or his lack of legal representation).

9. Rodgers claims he was not able to file a timely petition with the Supreme Court of Virginia, despite his good-faith attempts to do so. Although he states in support that his facility went on twenty-four hour lockdown shortly after he filed his notice of appeal, he does not indicate how long the lockdown lasted, nor whether he made any effort during this period to prepare and file the petition or seek an administrative grievance. He also states that he was transferred to another facility before he had time to complete his petition for appeal. Again, however, Rodgers provides no date for this transfer, nor any explanation of what specific circumstances during the transfer prevented him from preparing his petition. He offers nothing other than the fact that he wrote to the Clerk of the Supreme Court of Virginia explaining his situation, and was informed that a late petition would not be accepted.

mental miscarriage of justice, such as actual innocence. *Harris,* 489 U.S. at 260, 109 S.Ct. 1038.

 Both requirements are met as to claim (2). First, although a state court has not had the opportunity to declare claim (2) procedurally barred under *Slayton,* there is no doubt that if Rodgers were required to exhaust, precisely this would occur. But a petitioner is not required to exhaust a claim where, as here, it is clear that it would be futile to do so. *See Justus v. Murray,* 897 F.2d 709 (4th Cir.1990). In these circumstances, then, it is clear that were claim (2) to be presented to the Supreme Court of Virginia, it would be held to be procedurally barred under *Slayton.*

Nor is there any doubt that the second requirement for a procedural default is met, as the Fourth Circuit has held consistently that "the procedural default rule set forth in *Slayton* constitutes an adequate and independent state law ground for decision." *Mu'min v. Pruett,* 125 F.3d 192, 196 (4th Cir.), *cert. denied,* 522 U.S. 978, 118 S.Ct. 438, 139 L.Ed.2d 337 (1997) (mem.). Accordingly, claim (2) may not be considered on the merits unless Rodgers "can demonstrate that cause and prejudice exist to excuse the default or that the failure of the court to consider the claims would amount to a fundamental miscarriage of justice," *i.e.,* actual innocence. *Mackall v. Angelone,* 131 F.3d 442, 446 (4th Cir.1997), *cert. denied,* 522 U.S. 1100, 118 S.Ct. 907, 139 L.Ed.2d 922 (1998) (mem.).

### A. Cause and Prejudice

 The existence of cause ordinarily turns upon a showing of: (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. *See Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Clozza v. Murray,*

913 F.2d 1092 (4th Cir.1990), *cert. denied,* 499 U.S. 913, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991); *Clanton v. Muncy,* 845 F.2d 1238, 1241–42 (4th Cir.), *cert. denied,* 485 U.S. 1000, 108 S.Ct. 1459, 99 L.Ed.2d 690 (1988).

Rodgers has provided no explanation as to why his counsel failed to raise claim (2) concerning prosecutorial misconduct on direct appeal. It is clear from the date of Newell's first letter that it was available to Rodgers, and therefore to his attorney, during the course of the direct appeal. Thus, Rodgers has failed to establish cause regarding claim (2). Therefore, it is unnecessary to reach the issue of prejudice.

### B. Actual Innocence

 Where the constitutional violation has probably resulted in the conviction of one who is actually innocent, the writ may be granted even without showing of cause and prejudice. *See Carrier,* 477 U.S. at 496, 106 S.Ct. 2639. In such cases, the principles of comity and finality yield to the imperative of correcting a fundamentally unjust incarceration. *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Importantly, however, errors of fact are insufficient to establish actual innocence absent an independent constitutional violation. *See Herrera v. Collins,* 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (holding that a claim of actual innocence is not in itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits). Instead, petitioner must establish that, "in the light of all the evidence, ... it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo,* 513 U.S. 298, 327–28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (citing *Sawyer v. Whit-*

*ley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)).

Rodgers' submission falls short of meeting this standard. Even assuming Newell's recantations to be true, Rodgers has failed to establish he is actually innocent of assault and malicious wounding. Thus, Newell does not deny that Rodgers beat her severely, only that he did not choke her and cause her to lose consciousness. Her opinion that Rodgers did not intend to hurt anyone before coming to the house is pure speculation and does not detract from the evidence presented at trial that he did have intent to harm. Likewise, Newell's allegations that she knows her mother is lying is not persuasive; she cannot refute her mother's testimony about the assault on her mother because Newell admitted in her testimony that she was not present at the time and place Rodgers assaulted her mother. In short, Newell's statements are simply not credible. *See e.g. United States v. Wallace,* 528 F.2d 863, 866 (4th Cir.1976) (setting forth the standard for granting a new trial because of a witness's later recantation).

As it is clear that Rodgers has failed to overcome the procedural bar, claim (2) must be dismissed.

### V.

 Claims (1), (3) and (4) deserve the same fate as they cannot pass muster under § 2254(d). When a state court has addressed the merits of a claim raised in a federal habeas petition, the federal court cannot grant the petition based on the claim unless the state court's adjudications are contrary to, or an unreasonable application of, clearly established federal law, or are based on an unreasonable determi-

nation of the facts. *See* 28 U.S.C. § 2254(d).[10] The evaluation of whether a state decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. *See Williams v. Taylor,* —— U.S. ——, ——, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000) (*"T. Williams"*). A state court determination meets the "contrary to" standard "if the state court 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Evans v. Smith,* 220 F.3d 306, 312 (4th Cir.2000) (quoting *T. Williams,* —— U.S. at ——, 120 S.Ct. at 1523) (alteration in original). Under the "reasonable application" clause, the writ should be granted if the federal court finds that the "state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *See Evans,* at 312 (quoting *T. Williams,* —— U.S. at ——, 120 S.Ct. at 1523) (alteration in original). Moreover, this standard of reasonableness is an objective one. *See T. Williams,* —— U.S. at ——, 120 S.Ct. at 1524.

Whether a state court's application of federal law to a set of facts is an objectively reasonable application of clearly established federal law thus will depend upon the specific facts of the case as they were developed in the state court proceedings. In the instant case, the Supreme Court of Virginia's disposition of claims (1), (3) and (4) clearly were not contrary to clearly established federal law. The remaining question is whether the state court's inter-

---

**10.** 28 U.S.C. § 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

pretation was unreasonable in light of Supreme Court jurisprudence.

## A. *Claims (3) and (4)*

■ Claims (3) and (4) are based on the contention that Newell and Lopez gave perjured testimony at trial and that the perjured testimony fatally infected the guilty verdict.

■ It is a well-settled principle that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (footnote omitted); *United States v. Bagley,* 473 U.S. 667, 678–79, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). To prevail on this ground, however, a petitioner bears the burden of demonstrating (i) that the witness gave false testimony, and (ii) that both the witness and the prosecutor "knew the testimony in question was false." *Stockton v. Virginia,* 852 F.2d 740, 749 (4th Cir.1988) (quoting *Thompson v. Garrison,* 516 F.2d 986, 988 (4th Cir.), *cert. denied,* 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975)); *Payne v. Thompson,* 853 F.Supp. 932, 936 (E.D.Va.1994). This standard is not automatically met by recantation of a witness's testimony. *Id.* Moreover, a prosecutor's mere suspicion about testimony is not enough. *See, e.g., Bank of Nova Scotia v. United States,* 487 U.S. 250, 261, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) ("Although the Government may have doubts about the accuracy of certain aspects of [evidence], this is quite different from having knowledge of falsity.").

■ Even assuming, *arguendo,* that both Newell and Lopez committed perjury, which is by no means evident even considering Newell's after-the-fact recantation letters, there is no evidence that the prosecutor knew this or did anything more than require both victims to testify. The trial

court's comments to Newell also make it clear that she was well aware of her duty to testify and the penalty if she refused to do so. Requiring an unwilling witness to testify does not amount to allowing a witness to commit perjury. Therefore, claims (3) and (4) must be dismissed under § 2254(d).

## B. *Claim (1)*

■ Rodgers also argues that the evidence was insufficient to support his conviction for malicious wounding. The standard of review for an insufficient evidence claim is deferential to the finder of facts; it is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *Inge v. Procunier,* 758 F.2d 1010 (4th Cir.1985) *cert. denied,* 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 85 (1985); *Goldsmith v. Witkowski,* 981 F.2d 697, 701 (4th Cir.1992), *cert. denied,* 509 U.S. 913, 113 S.Ct. 3020, 125 L.Ed.2d 709, (1993). And, importantly, a court may not question the fact finder's determinations of witness credibility. *See Sumner v. Mata,* 455 U.S. 591, 591–93, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (per curiam) (Section 2254(d) plainly requires a federal habeas court to presume factual findings made by a state court after a full and fair hearing on the merits to be correct unless "not fairly supported by the record"); *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983) (Section "2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); *United States v. Saunders,* 886 F.2d 56 (4th Cir.1989); *Pigford v. United States,* 518 F.2d 831 (4th Cir.1975).

■ Rodgers alleges that the charge of malicious wounding was not supported by

the record because Lopez testified to extensive injuries that were not borne out in the medical records. Rodgers argues that Lopez's medical records reveal only three rib fractures, and some cuts and bruises. Yet, Rodgers' contentions are effectively refuted by the medical records. Thus, the treating emergency room physician's assessment notes indicate that Lopez sustained multiple contusions on her head, including her face, and tenderness in her left shoulder, neck and back. The notes also reflect that Lopez experienced difficulty breathing and a concussion. Rodgers' counsel also cross-examined Lopez in detail about the extent of her injuries, providing Rodgers with a full opportunity to challenge Lopez's statements at trial. The evidence was clearly sufficient to support a guilty verdict.

Rodgers also contends that the evidence failed to establish the requisite malice. This contention also fails; Lopez's testimony that Rodgers said he wanted to "kill" them, coupled with the medical evidence of the severity of the victims' injuries, is more than sufficient for a reasonable fact finder to determine that Rodgers had the requisite malice to commit the malicious wounding offense.

### VI.

The conclusions reached here may be summarized as follows:

1. Rodgers' collateral appeal to the Supreme Court of Virginia was not a "property filed application" under § 2244(d)(2) because he failed to file a timely petition for appeal following the filing of his notice of appeal, as required by the Rules of the Supreme Court of Virginia. Accordingly, his notice of appeal did not toll the running of the one year statute of limitations under § 2244;

2. Equitable tolling is applicable to the § 2244 statute of limitations, but the current record is inadequate to determine whether such tolling is appropriate in this case. In these circumstances, it is appropriate to assume, *arguendo*, that equitable tolling applies and proceed to consider whether any of the claims merit habeas relief;

3. Claim (2) is procedurally defaulted and there is no showing of cause and prejudice, or actual innocence; and,

4. Claims (1), (3) and (4), while not procedurally barred, warrant no habeas relief under § 2254(d), as the state court denial of these claims was neither contrary to, nor an objectively unreasonable application of, settled federal law.

Accordingly, respondent's Motion to Dismiss must be granted and this petition must be dismissed. An appropriate Order shall issue.